PER CURIAM.
Daniel 0. Conahan, Jr., appeals an order of the circuit court denying his motion filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus.[1] For the reasons that follow, we affirm the denial of his postconviction motion and deny his habeas petition.
I. BACKGROUND
Conahan was convicted of the 1996 first-degree murder and kidnapping of Richard Montgomery. The facts of this case were fully set out by this Court on direct appeal:
On April 16, 1996, Richard Montgomery, who lived with his sister, was with Bobby Whitaker, Gary Mason, and other friends when he mentioned that he was going out to make a few hundred dollars and would be back shortly. When asked whether it was legal, he smiled. Montgomery also told his mother that someone had offered to pay him $200 to pose for nude pictures, but he did not tell her who made the offer. In the same conversation, Montgomery mentioned that he had recently met the defendant Daniel 0. Conahan, Jr., who lived in Punta Gorda Isles and was a nurse at a medical center. The last time friends saw Montgomery alive was on April 16 between 4 p.m. and 7 p.m.
The next day, April 17, Thomas Reese and Michael Tish, who were storm utility engineers for Charlotte County, discovered a human skull in a remote, heavily wooded area off of Highway 41 and immediately notified the police de *724 partment. While searching the scene, deputies found the nude body of a young, white male that was later identified as Richard Montgomery. He had visible signs of trauma to the neck, waist, and wrists, and the genitalia had been removed. The forensic lab personnel arrived and collected various items from the scene, including a rope found on the top of a nearby trash pile, carpet padding that covered the victim’s body, a skull and a torso (neither of which belonged to the victim), a gray coat, and various combings from the victim’s arms, hands, chest, pubic area, and thighs. On the following day, Deputy Todd Terrell arrived on the scene with a K-9 dog which showed significant interest in a sabal palm tree, specifically the side of the tree which was somewhat flattened and damaged.
An autopsy revealed that Montgomery died as a result of strangulation. He had two ligature marks on the front of his neck, two horizontal marks on the right side of his chest, and abraded grooves around his wrists. All of the grooves were of similar width, did not extend to Montgomery’s back, and were consistent with marks that would be left on an individual who had been tied to a tree.
Due to the unique nature of the homicide (being tied to a tree naked and then strangled), police reviewed a similar assault reported on August 15, 1994. The victim, Stanley Burden, was a high school drop-out who, like Montgomery, had difficulty keeping a steady job and had physical features similar to those of Montgomery. The report indicated that Burden met Conahan, who offered to pay him $100 to $150 to pose for nude photographs. Burden agreed and Cona-han drove him to a rocky dirt road in a secluded area where Conahan pulled out a duffle bag with a tarp and a Polaroid camera. The two men headed into the woods where Conahan laid the tarp out and asked Burden to take off his shirt and show a little hip. After taking numerous pictures of Burden, Conahan then took out a new package of clothesline so he could get some bondage pictures. He asked Burden to step close to a nearby tree and then clipped the clothesline in several pieces, draping them over Burden to make it look like bondage. Conahan moved behind Burden, snapped the rope tightly around him, pulled his hands behind the tree, placed ropes around his legs and chest, and wrapped the rope twice around Burden’s neck. Conahan then performed oral sex on Burden and attempted to sodomize him. Burden fought to position himself in the middle of the tree while Conahan tried to pull him to the side to have anal sex. After many unsuccessful attempts, Conahan snapped the rope around Burden’s neck, placed his foot against the tree, and pulled on the rope in an attempt to strangle Burden, who tried to slide around the tree to keep his windpipe open. Conahan hit Burden in the head and unsuccessfully attempted to strangle him for thirty minutes. Conahan asked Burden why he would not die and finally gave up, gathered his possessions, and left. Burden freed himself, went to a local hospital, and received treatment for his injuries. The police located the crime scene and found that one of the melaleuca trees had ligature indentions that corresponded with Burden’s injuries.
Based on this information, the police began an undercover investigation of Conahan. On May 24, 1996, Deputy Scott Clemens was approached by Cona-han at Kiwanis Park, and Conahan offered Clemens $7 to show his penis or $20 if Clemens would allow Conahan to *725 perform fellatio. Clemens refused the offer and the next day returned to the park where he again encountered Cona-han, who offered him $150 to pose for nude photos.
On May 31, 1996, pursuant to a warrant, the police searched Conahan’s residence and vehicles and obtained paint samples from his father’s Mercury Capri, which Conahan occasionally used. The police then compared paint samples from the Capri with a paint chip from the victim’s body and found that they were indistinguishable.
On February 25, 1997, Conahan was indicted for first-degree premeditated murder, first-degree felony murder, kidnapping, and sexual battery of Richard Montgomery. In the guilt phase of his trial, Conahan waived his right to trial by jury. The State presented evidence of the manner in which the victim’s body was found and evidence obtained from the autopsy and the searches of Cona-han’s residence and vehicles. The State also presented evidence that on the day of Montgomery’s disappearance, April 16, 1996, at 6:07 p.m., Conahan’s credit card was used to purchase clothesline, Polaroid film, pliers, and a utility knife from a Wal-Mart store in Punta Gorda. Still photos showed that minutes later, at 6:12 p.m., Conahan withdrew funds from an ATM which was located close to the Wal-Mart.
The trial court permitted the State to introduce Williams[2] rule evidence of Burden’s attempted murder and sexual battery, ruling that the evidence was sufficiently similar to the evidence leading up to Montgomery’s death so as to constitute a unique modus operandi sufficient to establish the identity of Montgomery’s murderer.
Conahan v. State, 844 So.2d 629, 632-34 (Fla.2003).
After a bench trial, Conahan was found guilty of the first-degree premeditated murder and kidnapping of Richard Montgomery. The penalty phase was conducted on November 1, 1999, before a jury. Id. at 634. The medical examiner testified that Montgomery died by ligature strangulation. Id. The defense also presented testimony from Conahan’s aunt, Betty Wilson, “that Conahan was a jovial, personable individual who participated in family activities and cared for his ailing mother before she died.” Id. Additionally, the father and sister of Conahan’s former lover, Hal Linde, testified to the good things that Conahan had done for the family and that he was like a member of their family. Id.
The jury unanimously recommended the death penalty, and Conahan was sentenced to death for the first-degree murder of Richard Montgomery and to fifteen years’ imprisonment for kidnapping.[3] Id. On direct appeal, this Court affirmed both convictions and sentences,[4] id. at 643, and the *726 United States Supreme Court denied cer-tiorari, Conahan v. Florida, 540 U.S. 895, 124 S.Ct. 240, 157 L.Ed.2d 172 (2003).
In October 2009, Conahan filed a motion for postconviction relief asserting twenty-claims. The circuit court granted an evi-dentiary hearing on several of the claims, while summarily denying others. Following the evidentiary hearing in June 2010, the circuit court entered an order denying postconviction relief on all claims, concluding they were either procedurally barred, conclusively refuted by the record, facially or legally insufficient as alleged, or without merit as a matter of law.
Conahan appeals the circuit court’s denial of postconviction relief and also petitions this Court for a writ of habeas corpus.
II. POSTCONVICTION MOTION

A. Ineffective During the Guilt Phase

Conahan argues that his trial counsel provided ineffective assistance during the guilt phase for: (1) failing to demand a Richardson[5] hearing; (2) failing to secure a forensic audio expert; and (3) failing to object to and challenge the Williams rule evidence. Because Conahan has failed to establish the requirements necessary for relief, we affirm the circuit court’s denial.
Following the United States Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court explained that for ineffective assistance of counsel claims to be successful, two prongs must be established:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Bolin v. State, 41 So.3d 151, 155 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
Regarding the first prong of the Strickland standard, there is a strong presumption that counsel’s performance was not deficient, and it is the defendant’s burden to overcome this presumption. Strickland, 466 U.S. at 689-90, 104 S.Ct. 2052. Additionally, every effort must be made to eliminate the effects of hindsight and “to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052.
The second prong of Strickland requires that the defendant prove prejudice resulted from the deficient performance. In order to prove prejudice, a defendant must show that, but for counsel’s deficiency, there is a reasonable probability that there would have been a different outcome. *727 Henry v. State, 948 So.2d 609, 617 (Fla.2006). “A reasonable probability is a ‘probability sufficient to undermine confidence in the outcome.’ ” Id. (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).

1. Failure to Demand a Richardson Hearing

First, Conahan claims that trial counsel was ineffective for failing to demand a Richardson hearing when Mrs. Montgomery, the victim’s mother, testified to a matter that was not in the transcript of the recorded statement she gave to law enforcement. Specifically, during cross-examination, Mrs. Montgomery testified that her son had told her he had met a man named Conahan and on re-direct stated that her son had told her that Conahan lived in Punta Gorda Isles, was a nurse, and had been in the Navy. When asked why she had never told this information to police she stated that she “thought” she had when she gave her recorded statement, proposing that the information was described as “inaudible” in the transcript. Because Conahan has failed to establish deficiency or prejudice, we affirm the circuit court’s denial of this claim.
Specifically, Conahan has failed to demonstrate how counsel’s actions were not reasonable given the facts of the case and counsel’s perspective at the time. Trial counsel testified at the evidentiary hearing that he did not object to the testimony because it was elicited as a result of a direct question on cross-examination and he could not figure out a way to “unring the bell.” Instead, trial counsel attempted to impeach Mrs. Montgomery’s testimony. This Court has held that counsel will not be held ineffective if “alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000).
Additionally, Conahan failed to establish prejudice. Even if Mrs. Montgomery’s testimony was stricken after a Richardson hearing, the outcome would have been the same and confidence is not undermined because there was other evidence linking the victim and Conahan, such as the testimony of Whitaker and Newman. Newman had been Conahan’s cellmate at one time and testified at trial that Conahan had told him he knew the victim, Mr. Montgomery. Specifically, Newman testified that Conahan had said he had been on beer runs with Montgomery, had been to Montgomery’s house, and that “Montgomery was a mistake.” And Whitaker and the victim were roommates at one time, and Whitaker testified that Conahan had come to his home looking for Montgomery.
Accordingly, because Conahan has failed to establish both prongs of Strickland, he is not entitled to relief on this claim.

2. Failure to Secure a Forensic Audio Expert

Next, Conahan claims that trial counsel was ineffective for failing to secure an audio expert to analyze the inaudible portions of Mrs. Montgomery’s recorded statement. However, because Conahan has failed to establish prejudice, we uphold the circuit court’s denial of relief.
*728 In this case, even if counsel had obtained an audio expert to analyze the statement, it would not have changed the nature of Mrs. Montgomery’s testimony that she “thought” she had told officers this information during the interview in which the recorded statement was made. Moreover, having a more accurate transcript would not have broken the eviden-tiary link between Conahan and the victim because there were two other witnesses, Whitaker and Newman, who established that Conahan and the victim knew each other. Therefore, there is not a reasonable probability of a different outcome. Our confidence in the outcome is not undermined.
Accordingly, we affirm the circuit court’s denial of this claim.

3. Failure to Object to and Challenge the Williams Rule Evidence

Next, Conahan argues that trial counsel was ineffective for failing to object to and challenge the Williams rule evidence that was admitted during the guilt phase of his trial. We affirm the circuit court’s denial of this claim.
This claim is conclusively refuted by the record, which indicates that trial counsel repeatedly objected to the Williams rule evidence and that the trial court treated this as a standing objection. As for Conahan’s challenge to the sufficiency and detail of the objections, the record demonstrates that trial counsel went to great lengths to point out differences between the assault on Stanley Burden and the murder of Richard Montgomery and presented detailed arguments as to why the other Williams rule evidence should not be admitted. This Court has repeatedly held that “[c]ounsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel’s strategic decisions.” Occhicone, 768 So.2d at 1048; see also Chandler v. State, 848 So.2d 1031, 1045-46 (Fla.2003) (holding that disagreeing with trial counsel’s strategy of not vigorously challenging the Williams rule evidence did not mean that trial counsel was ineffective).
Accordingly, we affirm the denial of this claim,[6]

B. Giglio Violation

Conahan also contends that the State violated Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), by knowingly using the false testimony of Mrs. Montgomery. We disagree.
To establish a Giglio violation, three prongs must be shown: (1) the testimony was false; (2) the prosecutor knew it was false; and (3) the testimony was material. Guzman v. State, 868 So.2d 498, 505 (Fla.2003) (citing Ventura v. State, 794 So.2d 553, 562 (Fla.2001)). If the defendant successfully establishes the first two prongs, then the State bears the burden of proving that the testimony was not material by showing that there is no reasonable possibility that it could have affected the verdict because it was harmless beyond a reasonable doubt. See Johnson v. State, *729 44 So.3d 51, 64-65 (Fla.2010); Guzman, 868 So.2d at 506-07. In evaluating Giglio claims, this Court applies a mixed standard of review, deferring to the trial court’s factual findings that are supported by competent, substantial evidence-and reviewing the application of the law to those facts de novo. Suggs v. State, 923 So.2d 419, 426 (Fla.2005) (citing Sochor, 883 So.2d at 785).
In this case, Conahan has failed to establish that Mrs. Montgomery’s testimony was false. Mrs. Montgomery qualified her testimony, stating that she “thought” she told law enforcement this information when she gave her recorded statement. However, the State stipulated at the evi-dentiary hearing that the name Conahan does not appear in the recorded statement, which tends to show that her self-qualified “thought” was mistaken, not necessarily that her testimony was false. Additionally, the transcript of the recorded statement indicates that Mrs. Montgomery provided the officers taking her statement with some information prior to the tape being turned on. Perhaps Mrs. Montgomery relayed the information at that point. Furthermore, there was additional testimony presented at the evidentiary hearing that indicates Mrs. Montgomery had interactions with other law enforcement officers and made an oral statement to the prosecutor concerning this matter, the circumstances and contents of which collateral counsel did not pursue at the evidentiary hearing. Therefore, Conahan has failed to establish that Mrs. Montgomery’s testimony was false.
Additionally, the State has established that the testimony was immaterial because there was no reasonable possibility of a different verdict as it was harmless beyond a reasonable doubt. See Johnson, 44 So.3d at 64-65; Guzman, 868 So.2d at 506-07 (defendant is not entitled to relief if State can prove that presentation of false testimony was harmless beyond a reasonable doubt). As the State demonstrates, the testimony from Newman and Whitaker established that the victim and the defendant knew one another. Moreover, the admission of the Williams rule evidence was not contingent upon Mrs. Montgomery’s testimony. As we noted on direct appeal,
Conahan killed Montgomery in the same manner in which he attempted to kill Stanley Burden. Montgomery and Burden were similar physically; neither one completed high school; both had difficulty in maintaining employment and were in need of money when Conahan solicited them to pose nude for money in a secluded wooded area. Both were tied to a tree and suffered similar abrasions and ligature wounds.
Conahan, 844 So.2d at 635.
Accordingly, Conahan has failed to establish that a Giglio violation occurred, and we affirm the circuit court’s denial of relief.

C. Brady Claim

Next, Conahan alleges that the State in this case failed to turn over an audio recording of an undercover operation on May 29, 1996, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We affirm the denial of this claim.
In order to establish a Brady violation, three elements must be shown: (1) the evidence at issue was favorable to the defendant, either because it is exculpatory or is impeaching; (2) the evidence was suppressed, willfully or inadvertently, by the State; and (3) because the evidence was material, its suppression resulted in prejudice. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); see also Johnson v. State, 921 *730 So.2d 490, 507 (Fla.2005); Rogers v. State, 782 So.2d 373, 378 (Fla.2001). To establish the materiality element of Brady, the defendant must demonstrate ‘“a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’ ” Guzman, 868 So.2d at 506 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). “A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” Id. (quoting Bagley, 473 U.S. at 682, 105 S.Ct. 3375).
When addressing Brady claims, this Court utilizes a mixed standard of review, “ ‘deferring] to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but reviewing] de novo the application of those facts to the law.’” Sochor, 883 So.2d at 785 (quoting Lightbourne v. State, 841 So.2d 431, 437-38 (Fla.2003)).
First, Conahan has failed to establish that the recording at issue actually exists and that the State suppressed this evidence. None of the witnesses at the evidentiary hearing could conclusively say whether or not a tape had been made of the May 29, 1996, undercover operation, and no one had ever seen or heard a recording from that day. Testimony or evidence that recordings were made on other days or in other operations has no bearing on whether a recording was made on May 29. Furthermore, Conahan has not presented any evidence that the State suppressed the alleged recording. Therefore, his Brady claim was properly denied on this basis alone. See Wyatt v. State, 71 So.3d 86, 106 (Fla.2011) (denying defendant’s Brady claim because he failed to establish “the existence of evidence [for the State] to withhold”).
Second, Conahan has failed to establish that the evidence is either exculpatory or impeaching. Conahan claims that the contents of the tape would have shown that he was interested in seeking sex for money and was not interested in soliciting men for nude photographs. However, this very contention is refuted by the record. The testimony from the undercover officers demonstrates that on separate occasions Conahan solicited the officers for sex acts and to pose in nude bondage photographs. Additionally, Conahan admitted during his testimony at trial that he solicited Mr. Burden to pose in nude bondage photographs, who was the victim of the similar assault that was admitted as Williams rule evidence. Finally, Mr. Burden’s independent testimony of his encounter with Conahan also refutes the argument that Conahan did not solicit men for nude photographs, Therefore, if this recording exists, it would not have the exculpatory effect claimed by the defendant because other evidence demonstrated the defendant’s solicitation of men for photographs.
Accordingly, this Court affirms the circuit court’s denial of Conahan’s Brady claim.

D. Ineffective During the Penalty Phase

1. Failure to investigate and present mitigation evidence

Next, Conahan claims that trial counsel was ineffective for failing to adequately investigate and present mitigation evidence in the penalty phase. Specifically, he claims trial counsel was ineffective for failing to present the mental health and competency evaluations of Doctor Gunder and Doctor Keown, failing to have a neu-ropsychologist evaluate him, and failing to present the testimony of the mitigation specialists, the investigator, and his sister. We affirm the circuit court’s denial of relief.
*731 As explained earlier, this Court has described the two prongs of Stñckland as follows:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Bolin, 41 So.3d at 155 (quoting Maxwell, 490 So.2d at 932).
Regarding the second prong,
[the defendant] must show that but for his counsel’s deficiency, there is a reasonable probability he would have received a different sentence. To assess that probability, we consider “the totality of the available mitigation evidence— both that adduced at trial, and the evidence adduced in the [postconviction] proceeding”—and “reweig[h] it against the evidence in aggravation.”
Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 453-54, 175 L.Ed.2d 398 (2009) (quoting Williams v. Taylor, 529 U.S. 362, 397-98, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). “A reasonable probability is a ‘probability sufficient to undermine confidence in the outcome.’ ” Henry, 948 So.2d at 617 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
Here, Conahan has failed to demonstrate that trial counsel’s performance resulted in prejudice. At the evidentiary hearing, Conahan did not present any additional statutory or non-statutory mitigation evidence, experts, or witnesses that would have been available at trial and that trial counsel failed to present. Additionally, Conahan did not present his sister’s testimony at the evidentiary hearing, so it is unknown how it could possibly have aided him.
Thus, Conahan has not demonstrated prejudice because “the mitigating evidence adduced at the evidentiary hearing combined with the mitigation evidence presented at the penalty phase would not outweigh the evidence in aggravation.” Tanzi v. State, 94 So.3d 482, 491 (Fla.2012); see also Porter, 130 S.Ct. at 453-54. In other words, Conahan did not demonstrate that calling any of these individuals as witnesses would have resulted in mitigation that would “undermine[ ] this Court’s confidence in the sentence of death when viewed in the context of the penalty phase evidence and the mitigators and aggrava-tors found by the trial court.” Hurst v. State, 18 So.3d 975, 1013 (Fla.2009).
Accordingly, we affirm the circuit court’s denial of relief.

2. Failure to question jurors about homosexuality

Next, Conahan argues that trial counsel was ineffective during voir dire for failing to question the panel regarding their views on homosexuality. However, we affirm the circuit court’s denial of this claim.
Specifically, Conahan has failed to establish prejudice under Strickland. This Court has previously held that a defendant must demonstrate that an unqualified or biased juror actually served on his jury in order to demonstrate prejudice in a post-conviction ineffective assistance of counsel claim. See Davis v. State, 928 So.2d 1089, 1117 (Fla.2005). Conahan has not presented any evidence that a juror who was biased because of his or her personal views regarding homosexuality actually served on his jury. Therefore, there is not a reasonable probability of a different sentence, and our confidence in the outcome is not undermined.

*732
E. Prosecutorial Misconduct

Next, Conahan alleges that there were several instances of prosecutorial misconduct that occurred during his trial that his trial counsel failed to object to and, when considered cumulatively, amount to fundamental error. Specifically, the alleged instances of misconduct are that: (1) the State improperly delayed the prosecution of the Burden case in bad faith so that it could use the Burden assault as Williams rule evidence in this case; (2) the testimony of Hal Linde, Conahan’s former lover, regarding Conahan’s sexual bondage fantasy was admitted by the State for the purpose of showing the bad character of Conahan and his propensity for violence; (3) the State committed a Brady violation by faffing to disclose the recording of the May 29, 1996, surveillance operation and committed a Giglio violation by allowing Mrs. Montgomery’s false testimony to go uncorrected; and (4) the State, when opposing Conahan’s motion for judgment of acquittal, misrepresented the testimony of Newman and improperly argued aspects of Mrs. Montgomery’s false testimony to bolster the testimony of Newman and Whitaker. The circuit court denied this claim as proeedurally barred, and we affirm.
This Court already considered claims of prosecutorial misconduct on direct appeal and found that, although the prosecutor’s comments during opening statements were improper, the error was harmless. Conahan, 844 So.2d at 639-41. Conahan’s additional prosecutorial misconduct claims should have or could have been raised on direct appeal. See Franqui v. State, 965 So.2d at 35 (holding the defendant’s claim that improper prosecutorial comments constituted fundamental error was proeedurally barred because it could have been raised as fundamental error on direct appeal); Spencer, 842 So.2d at 68 (holding that “[i]ssues which either were or could have been litigated ... upon direct appeal are not cognizable through collateral attack”) (quoting Smith v. State, 445 So.2d 323, 325 (Fla.1983)). Therefore, Conahan’s claims are proeedurally barred, and we affirm the circuit court’s denial.
III. HABEAS PETITION

A. Ineffective Appellate Counsel

1. Failure to raise the issue of fundamental error with regards to the Williams rule evidence

In his habeas petition, Conahan claims that his appellate counsel on direct appeal was ineffective for failing to argue that the admission of the Williams rule evidence was fundamental error because it was not established by clear and convincing evidence, was not sufficiently similar, and became a feature of the trial. However, Conahan is not entitled to relief.
Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for a writ of habeas corpus. Valle v. Moore, 837 So.2d 905, 907 (Fla.2002); Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). The standard of review for claims of ineffective assistance of appellate counsel mirrors the Strickland standard for ineffective assistance of trial counsel. Valle, 837 So.2d at 907. In order to grant habeas relief on an ineffectiveness of appellate counsel claim, this Court must determine:
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
*733 Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986) (citing Johnson v. Wainwright, 463 So.2d 207, 209 (Fla.1985)). The reviewing court must presume that counsel’s conduct was within the broad range of reasonable professional conduct, and the defendant bears the burden of overcoming this presumption. See Freeman, 761 So.2d at 1069 (noting that the defendant bears “the burden of alleging a specific, serious omission or overt act upon which the ineffective assistance of [appellate] counsel can be based”). Additionally, habeas petitions are not vehicles for second appeals and cannot raise issues that should have or could have been raised on direct appeal. See Everett v. State, 54 So.3d 464, 488 (Fla.2010); Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992).
Furthermore, appellate counsel cannot be deemed deficient for failing to raise meritless issues or issues that were not properly raised in the trial court and are not fundamental error. Valle, 837 So.2d at 907-08. In order to be a fundamental error, “ ‘the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ” Jaimes v. State, 51 So.3d 445, 448 (Fla.2010) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
In this case, the admission of the Williams rule evidence was not error, let alone fundamental error. First, the Williams rule evidence was established by clear and convincing evidence. Mr. Burden gave unrebutted testimony at trial detailing his encounter with Conahan and the assault. Furthermore, the undercover detectives testified at trial regarding their interactions with Conahan and how Cona-han had solicited them to pose in nude bondage photographs. Additionally, there were recordings of some of these operations that confirmed the detectives’ testimony.
Second, the evidence was sufficiently similar and properly admitted because, as the trial court found, there were various points of similarity that were relevant to prove a common scheme or plan and an unusual modus operandi. We have previously held that the collateral crime does not have to be identical to the crime charged in order to be admitted as Williams rule evidence. See Gore v. State, 599 So.2d 978, 984 (Fla.1992) (noting that the collateral crime does not have to be identical to the crime charged and finding that the collateral crime in Gore was properly admitted and the dissimilarities seemed to be the result of differences in opportunity rather than differences in mo-dus operandi); see also Durousseau v. State, 55 So.3d 543, 551-52 (Fla.2010) (holding that evidence that the defendant committed substantially similar crimes on other occasions was properly admitted as Williams rule evidence because it was relevant to material issues such as identity and premeditation), cert. denied, - U.S. -, 132 S.Ct. 149, 181 L.Ed.2d 66 (2011).
Specifically, the trial court found multiple similarities between the victims, Burden and Montgomery, namely age, race, height, weight, and complexion. There were similarities between the crime scenes, including that they were both remote, secluded, wooded areas, accessible only by foot, and the victims were tied to a tree. In addition, the crimes were conducted in a similar manner. Clothesline-like rope was used, placement of rope and the strangulation caused grooved abrasions on the neck in the same area, both victims were naked, ropes were placed tightly on the wrists of the victims, the victims were offered money to pose in nude photos, and Conahan had purchased cutting pliers near the time of each crime.
*734 Furthermore, although the Williams rule evidence was helpful in establishing a common scheme or plan and a unique mo-dus operandi, it did not become a feature of the trial. The State produced other evidence that established Conahan’s guilt, including testimony from other witnesses that the victim and Conahan knew each other, testimony from the victim’s friends that Montgomery stated he was going to do something to make $200 on the night he was killed, evidence that Conahan withdrew a similar amount of cash from an ATM that evening, and a Walmart receipt showing that on that evening Conahan bought a rope identical to the one that the victim was tied up with, as well as a pair of pliers, polaroid film, and a knife. There was also testimony from the victim’s mother that her son had told her he had met a man named Conahan and that someone had offered him money to pose in nude photographs. Conaharis former lover testified that Conahan had a bondage fantasy, and Conahan himself admitted that he had a bondage fantasy. Moreover, there was other forensic evidence.
Accordingly, the Williams rule evidence was properly admitted and did not become an improper feature of the trial. Because it was properly admitted, there was no fundamental error. And appellate counsel cannot be deemed deficient for failing to raise this meritless issue.

2. Failure to argue that the trial court erred in finding Conahan guilty of kidnapping with the intent to commit a sexual battery

Next, Conahan claims that appellate counsel was ineffective for failing to argue on direct appeal that he should not have been convicted of kidnapping with the intent to commit a sexual battery because the State failed to prove beyond a reasonable doubt that he possessed this intent at the time of the kidnapping. This claim is without merit.
On direct appeal, Conahan challenged the kidnapping conviction, arguing that the State had not established that the victim had not consented to being tied to a tree. Conahan, 844 So.2d at 636. This Court rejected his claim and affirmed the denial of the motion for judgment of acquittal, finding that the State had proven a prima facie case for kidnapping and had established Conahan’s “common scheme of luring young men into a secluded, wooded area for sexual pleasure and murdering them under the guise of posing for nude bondage pictures.” Id. at 637. Thus, this Court effectively addressed this issue on direct appeal by finding that the evidence was sufficient to support the conviction, and appellate counsel cannot be held ineffective for failing to raise a claim this Court actually addressed on direct appeal. Valle, 837 So.2d at 908.
Accordingly, Conahan is not entitled to habeas relief.

3. Failure to raise that there was a ñawed search

Conahan also claims that appellate counsel was ineffective for failing to argue on direct appeal that there was a flawed search. However, Conahan is not entitled to habeas relief because this claim is facially insufficient.
A habeas petition must plead specific facts that entitle the defendant to relief. Conclusory allegations have repeatedly been held insufficient by this Court because they do not permit the court to examine the specific allegations against the record. Bradley v. State, 33 So.3d 664, 685 (Fla.2010) (citing Doorbal v. State, 983 So.2d 464, 482 (Fla.2008)); Patton v. State, 878 So.2d 368, 380 (Fla.2004) (citing Ragsdale v. State, 720 So.2d 203, *735 207 (Fla.1998) (finding that eonclusory allegations are also not sufficient for appellate purposes in habeas proceedings)). Because Conahan fails to plead specific facts as to how the search warrants and supporting affidavits were deficient, his claim is merely eonclusory and speculative. Therefore, he is not entitled to relief.

4. Failure to raise claim that prosecu-torial misconduct amounted to fundamental error

Lastly, Conahan asserts that there were several instances of prosecutorial misconduct that took place during his trial, which he claims appellate counsel should have raised on direct appeal. He alleges that the following instances of misconduct, when considered cumulatively, amount to fundamental error and entitle him to habe-as relief: (1) the State improperly delayed the prosecution of the Burden case in bad faith so that it could use the Burden assault as Williams rule evidence; (2) the State presented false testimony from Mrs. Montgomery; (3) the State committed a Brady violation by failing to disclose the recording of the May 29 surveillance operation; (4) the State, when opposing Cona-han’s motion for judgment of acquittal, misrepresented testimony of Newman and used Mrs. Montgomery’s false testimony to bolster the testimony of Newman and Whitaker and improperly implied that the reason the victim’s genitals were removed was because there was DNA evidence and that the genitals had been removed by the same kind of knife that Conahan purchased that day; and (5) that the State made improper comments during closing in the guilt phase.
We need only address claims one, four, and five, because the other claims were raised as part of Conahan’s postcon-viction motion, and he may not now reliti-gate these issues as part of his habeas petition. See Johnston v. State, 63 So.3d 730, 747 (Fla.2011) (holding that the defendant’s habeas claims were procedurally barred because they could have been or were raised in his postconviction motion); Knight v. State, 923 So.2d 387, 395 (Fla.2005) (holding that claims raised in a post-conviction motion cannot be relitigated in a habeas petition).
Because the remaining claims were not properly preserved at trial by objection, appellate counsel cannot be deficient for failing to raise these claims on appeal unless the claims constitute fundamental error. See Valle, 837 So.2d at 909. As previously explained, in order to be a fundamental error, “ ‘the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ” Jaimes, 51 So.3d at 448 (quoting Delva, 575 So.2d at 644-45).
Conahan first claims that the State committed prosecutorial misconduct by filing a nolle prosequi in the Burden case in order to gain a tactical advantage. However, Conahan provides no support for this assertion. Furthermore, there was no improper delay because as the circuit court found the State never re-filed charges in the Burden case. Thus, this claim is without merit.
Next, Conahan claims that the State misrepresented the testimony of Newman in the arguments opposing Cona-han’s motion for judgment of acquittal. However, this claim is refuted by the record. Specifically, the prosecutor argued that Newman had testified that Conahan initially denied knowing Montgomery, but then admitted he did know Montgomery and characterized Montgomery as a mistake. This is indeed the testimony that Newman provided at trial. Thus, the prosecution presented an accurate sum *736 mary of Newman’s testimony, and there was no misconduct.
Additionally, Conahan claims that the State misrepresented the testimony of Mrs. Montgomery in arguments opposing Conahan’s motion for judgment of acquittal. However, this claim is also refuted by the record. Specifically, the prosecutor argued that Mrs. Montgomery had testified that her son told her that he had met a man named Conahan who was a nurse and had been in the Navy and that someone had offered her son $200 to pose in nude photographs. This is an accurate summary of Mrs. Montgomery’s trial testimony. Therefore, this argument was not improper.
Next, Conahan claims that the State made improper arguments while opposing his motion for judgment of acquittal by implying that the reason the victim’s genitals had been removed was to eliminate DNA evidence and that the genitals had been removed by a sharp knife, the same kind that Conahan had purchased that day. However, Conahan is not entitled to relief. The alleged improper statements were made as part of the prosecutor’s specific argument opposing the judgment of acquittal on the sexual battery charge, but the trial court granted Conahan’s motion for judgment of acquittal on the sexual battery charge. Therefore, even if these arguments were misleading or improper, the error was not fundamental, and appellate counsel cannot be held deficient for failing to raise a meritless issue. Schoenwetter v. State, 46 So.3d 535, 563 (Fla.2010) (citing Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000)).
Finally, Conahan claims that the State made improper comments during the closing arguments of the guilt phase by (1) implying that Hal Linde held back in his testimony as to the full extent of Cona-han’s fantasy; (2) by arguing that Cona-han admitted to having a dark, sexual fantasy; and (3) by arguing in conflict with the medical examiner’s testimony that Co-nahan used a razor sharp knife to remove the genitals of Montgomery and stating there was some foreign material left behind in the genital area. Again, Conahan is not entitled to relief.
During closing arguments in the guilt phase, the prosecutor argued that Hal Linde, Conahan’s former lover, had testified to Conahan’s bondage fantasy that involved “picking up hitchhikers, taking them out in the woods, tying them up and having sex with them.” He then stated that it was obvious that Mr. Linde still cared for Conahan and that Mr. Linde held back the ultimate culmination of the fantasy, which was to murder the men after tying them up and having sex with them. These comments were not improper misrepresentations as the record shows that Mr. Linde did in fact testify about Conahan’s sexual bondage fantasy and did admit on the record that he was still in love with Conahan. Implying that the culmination of the fantasy was murder was reasonable given other evidence in the case. Conahan had seemingly acted out this same fantasy with Burden, and, as Burden testified at trial, Conahan attempted to kill Burden by trying to strangle him. Additionally, the record supports the prosecutor’s statement that Conahan admitted during his testimony to having a sexual bondage fantasy that included tying individuals up in the woods.
Furthermore, the medical examiner testified at trial that the genitals had been removed “very precisely with a sharp knife, ... or a scalpel blade, very sharp” and that upon examination of the area “some foreign material was there.” Therefore, the prosecutor’s comments that Conahan removed the victim’s genitals *737 with a razor sharp knife and that there was foreign material left behind was an accurate summary of all of the testimony and evidence that had been presented.
Accordingly, because appellate counsel cannot be deemed deficient for failing to raise meritless or procedurally barred issues, we deny relief.
IV. CONCLUSION
For the foregoing reasons, we affirm the denial of Conahan’s postconviction motion and deny his habeas petition.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

. Williams v. State, 110 So.2d 654 (Fla.1959).

. The trial court found three aggravating factors: "(1) that the murder was committed during the course of a kidnapping; (2) that the murder was cold, calculated, and premeditated (CCP); and (3) that the murder was heinous, atrocious, or cruel (HAC).” Cona-han, 844 So.2d at 642. The trial court considered the following nonstatutory mitigators: "(1) loyalty, affection, and service to his parents [some weight]; (2) self-improvement by enrolling in nursing school [some weight]; (3) ability to maintain good familial relationships [some weight]; (4) open, unselfish, polite personality [no weight]; and (5) hardworking character [little weight].” Id. at 642 & n. 10.

. On direct appeal, Conahan claimed that: (1) the trial court erred in denying his motion for judgment of acquittal because the evidence was legally insufficient to support a finding of premeditation; (2) the trial court erred in denying his motion for judgment of *726 acquittal on the kidnapping charge; (3) the trial court erred by instructing the jury on two of the aggravating factors; (4) that the prosecutor made improper comments during his opening and closing statements in the penalty phase; and (5) the trial court violated his right to a fair trial by admitting the autopsy and certain crime scene photos into evidence. Id. at 634-42. This Court found that the prosecutor made improper comments during his opening statements to the jury during the penalty phase but that the error was harmless. Id. at 639-40. All of Conahan's other claims were denied.

. Richardson v. State, 246 So.2d 771, 774-75 (Fla.1971).

. We do not discuss in detail Conahan’s claim that the trial court erred in summarily denying his ineffectiveness of trial counsel claim that the Williams rule evidence was not established by clear and convincing evidence, was not sufficiently similar to the charged offense, and became a “feature of the trial'' because we find the circuit court properly determined that this claim was procedurally barred. Co-nahan should have and could have raised this issue on direct appeal. See Connor v. State, 979 So.2d 852, 868 (Fla.2007); Franqui v. State, 965 So.2d 22, 35 (Fla.2007); Spencer v. State, 842 So.2d 52, 60-61 (Fla.2003). Moreover, as explained when addressing his habe-as petition, Conahan failed to establish that the admission of the Williams rule evidence amounted to fundamental error.