MORRIS, Judge,
Dissenting.
I respectfully dissent from the majority opinion in this case.
There is no question that the law enforcement officers were in lawful possession of Mr. Willis’s cell phone as he had given consent for them to retrieve it. The question here is whether the subsequent search of the contents of the cell phone falls under the good-faith exception to the exclusionary rule. At the time of the search, the only Florida case addressing cell phone searches which was then binding on all Florida trial courts was the First District’s opinion in Smallwood I, 61 So.3d 448. See Pardo, 596 So.2d at 666 (“[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts.”). Smallwood I held that a search of a cell phone incident to a lawful arrest was not a violation of the Fourth Amendment. 61 So.3d at 459.
Subsequent to the search involved in this case, the Florida Supreme Court quashed the First District’s opinion, holding that law enforcement officers are required to obtain a search warrant before searching the contents of a cell phone that *485 has been seized incident to a lawful arrest. Smallwood II, 118 So.3d 724. And following Smallwood II, the United States Supreme Court issued its opinion in Riley, — U.S.-, 134 S.Ct. 2473, 189 L.Ed.2d 430, wherein it reached the same holding. The majority holds that pursuant to Smallwood II and Riley, the search here resulted in a Fourth Amendment violation and that under Smallwood II, the evidence obtained as a result of that search should be excluded because it is not subject to the good-faith exception to the exclusionary rule.[4]
I conclude, however, that the majority’s reliance on Smallwood II is misplaced. First, the Smallwood cases can be distinguished from this case because at the time Smallwood I was decided, there were no cases from a Florida district court dealing with the issue of cell phone content searches. Thus the Pardo principle did not apply. But here, at the time of the search, Smallwood I existed as the only district court decision on the issue in Florida and, therefore, Pardo is applicable.
Second, I believe that the court in Smallwood II interpreted too narrowly the good-faith exception as analyzed in Davis. The State argued in Smallwood II that the good-faith exception to the warrant requirement should apply pursuant to Davis, but the court rejected that argument because “there [was] currently no United States Supreme Court precedent that addresses or expressly permits a search of the data, information, and content of a cellular phone under the search-ineident-to-arrest warrant exception.” Smallwood II, 113 So.3d at 739. The court distinguished Davis on the basis that it involved a “bright-line rule” involving the search of a vehicle’s passenger compartment, whereas in Smallwood, “no bright-line rule existed] for law enforcement officers to rely upon with regard to searches under these facts.” Id.
Although the court in Smallwood II focused on the lack of a “bright-line rule” or, more specifically, United States Supreme Court precedent, in deciding that the good-faith exception did not apply, Davis established no such requirement for application of the good-faith exception. In fact, in Davis, the relevant precedent being relied upon was an Eleventh Circuit case that had relied on United States Supreme Court precedent. Davis, 131 S.Ct. at 2426. Thus the issue in Davis was not whether there existed United States Supreme Court precedent, or even a “bright-line rule.” Rather, the issue was whether the good-faith exception should apply where law enforcement had reasonably relied on binding precedent.[5]
As noted by the majority, the holding of Davis was that “when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply.” Id. at 2434 (emphasis added). And while the majority is correct that there is a split in the case law as to what constitutes “binding appellate precedent,” I do not believe that the Supreme Court’s utilization of that term prevents the application of the good-faith *486 exception to cases such as this one where, at the time of the search, there was only-one Florida district court opinion addressing the issue. Indeed, by adopting the holding that the good-faith exception cannot apply because there was no decision from the Florida or United States Supreme Courts at the time of the search, the majority nullifies the holding of Pardo in cases involving facts like the present case and ignores the extensive analysis in Davis as to both the purpose and reach of the good-faith exception. It is also important to note that when referring to the type of case law on which law enforcement officers could reasonably rely, the Supreme Court used the terms “binding precedent” and “binding appellate precedent” interchangeably. Davis, 131 S.Ct. at 2423-24,2428-29, 2432, 2434. That fact, in conjunction with the Supreme Court’s analysis of the good-faith exception, leads me to conclude that the good-faith exception should apply in this case.
In Davis, the Supreme Court emphasized that the exclusionary rule is “ ‘not a personal constitutional right’ ” but instead is a “ ‘judicially created’ sanction” designed to “deter future Fourth Amendment violations.” 131 S.Ct. at 2433-34 (quoting Stone v. Powell, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)); see also Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (“Application of the exclusionary rule ‘is neither intended nor able to cure “the invasion of the defendant’s rights which he has already suffered.” ’ ” (quoting United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984))). In explaining why exclusion does not automatically follow a Fourth Amendment violation, the Supreme Court noted the societal costs that result from applying the exclusionary rule:
Exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort. For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.
Davis, 131 S.Ct. at 2427. Conversely, the Court explained that exclusion is unwarranted where it “fails to yield ‘appreciable deterrence.’ ” Id. at 2426-27 (quoting United States v. Janis, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)).
The Supreme Court then analyzed the types of situations in which deterrence would be most effective. Citing its earlier opinion in Leon, the Supreme Court differentiated between police conduct that was “deliberate,” “reckless,” or “grossly negligent,” for which “the deterrent value of exclusion is strong,” and police conduct based on an “objectively reasonable good-faith belief that their conduct is lawful” or conduct involving “only simple, isolated negligence,” for which “the deterrence rationale loses much of its force.” Davis, 131 S.Ct. at 2427-28 (internal quotation marks omitted). Because the law enforcement officers in Davis had “acted in strict compliance with binding precedent” (i.e., an Eleventh Circuit case), the Supreme Court concluded that their behavior “was not culpable in any way.” Id. at 2428 (citation omitted). The Court went on to elaborate that where a particular practice is authorized by binding appellate precedent, “[a]n officer who conducts a search in reliance on [that] precedent does no more than ac[t] as a reasonable officer would and should act under the circumstances” and thus exclusion in such a case would *487 only work to “discourage the officer from do[ing] his duty [which] is not the kind of deterrence the exclusionary rule seeks to foster.” Id. at 2429 (third and fourth alterations in original) (citations omitted). That deterrence rationale has been repeated time and time again in United States Supreme Court decisions. See, e.g., Herring v. United States, 555 U.S. 135, 141-46, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); Arizona v. Evans, 514 U.S. 1, 10-14, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); Krull, 480 U.S. at 347-52, 107 S.Ct. 1160; Leon, 468 U.S. at 918-19, 104 S.Ct. 3405; United States v. Calandra, 414 U.S. 338, 347-54, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).[6]
This is exactly the type of case for which deterrence has little value. The officers were complying with the only Florida case addressing the issue (Smallwood I), which according to Pardo was binding on all trial courts until it was later reversed in Small-wood II. That is far from the “deliberate,” “reckless,” or “grossly negligent” conduct for which the exclusionary rule has a deterrent effect. See Davis, 131 S.Ct. at 2427-28. Thus, my reading of Davis leads me to conclude that Smallwood I was “binding precedent” on which the officers could reasonably rely and that, therefore, the good-faith exception is applicable to this case.
The majority’s efforts to circumvent Pardo are unpersuasive. The majority notes that an opinion from a single district court is not binding on another district court in Florida. But that is not the issue here. Here, the issue is whether the good-faith exception applies where law enforcement officers in Florida objectively reasonably relied on the single Florida district court case addressing a Fourth Amendment issue.
The majority’s approach essentially carves out an exception to Pardo for cases involving Fourth Amendment issues. But there is nothing in Pardo which precludes its application in Fourth Amendment case law. Further, under the majority’s approach, if a single Florida district court decided in the first instance that a particular action violated the Fourth Amendment, then law enforcement officers in that district would have to either refrain from engaging in such conduct or face the prospect of having evidence suppressed, whereas law enforcement officers in other districts could freely engage in that conduct without fear of having evidence suppressed. That, in my opinion, is an absurd result. I conclude then that because Smallwood I was the only Florida district court case which addressed the issue at the time of the search, the officers were not only entitled to rely on it pursuant to Pardo, they were bound by duty to follow it. See Davis, 131 S.Ct. at 2429 (noting that officers who rely on binding precedent are acting as reasonable officers would and should under the circumstances). It is simply unreasonable to judge the constitutionality of the search on a standard which did not exist. Indeed, “[w]hen the police comply with authoritative precedent, only to see the law evolve after the fact, there is nothing to deter; the police cannot modify their conduct to accord with cases not yet decided.” United States v. Sparks, 711 F.3d 58, 63 (1st Cir.2013) (citing Davis, 131 S.Ct. at 2428-28).
*488 The majority summarily rejects the State’s argument that Smallwood II and Riley should have prospective application only by concluding that “the circumstances that warranted a prospective approach to the holding in Chimel [v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ], simply do not exist in this case.” I do not take issue with the conclusion that the new rule of law announced in Small-wood II and Riley should apply retroactively. But, as explained in Davis, the retroactive application of that rule of law is not dispositive of whether the good-faith exception applies.
There, the Supreme Court acknowledged that it previously held in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), that “newly announced rules of constitutional criminal procedure must apply ‘retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception.’ ” Davis, 131 S.Ct. at 2430 (quoting Griffith, 479 U.S. at 328, 107 S.Ct. 708). However, the Court explained that the application of the good-faith exception and the issue of retroactive application were two distinct doctrines: “retroactive application of a new rule of substantive Fourth Amendment law raises the question whether a suppression remedy applies; it does not answer that question.” Id. at 2431. The Court held that its decision in Gant, 556 U.S. 332,129 S.Ct. 1710, 173 L.Ed.2d 485, would apply to Davis’s case because his conviction was not final on direct review at the time Gant was decided. Davis, 131 S.Ct. at 2431. However, while Davis was entitled to invoke the new rule of law as announced in Gant as a basis for seeking relief, the Supreme Court made it clear that the issue of whether he was entitled to a remedy was a separate issue and that a remedy only applied where its purpose could be “ ‘effectively advanced.’ ” Id. (quoting Krull, 480 U.S. at 347, 107 S.Ct. 1160). The Supreme Court ultimately concluded that the good-faith exception was “an established limit on the remedy of exclusion” and that “[i]ts application ... neither contravene[d] Griffith nor deniefd] retroactive effect to Gant.” Id.
Similarly here, while Willis was entitled to challenge the validity of the search based upon Smallwood II and Riley, that fact does not answer the question of whether he is entitled to a remedy. And for the reasons I have already explained, I would conclude that he is not because the good-faith exception to the exclusionary rule applies to this case.
For these reasons, I would affirm.

. The majority’s reliance on Riley is based on the substantive Fourth Amendment issue. The issue of whether officers are entitled to rely on case law, which is later overruled, as a basis for the good-faith exception to apply was not raised in Riley.

. Of course, Smallwood II did not involve the factual scenario presented here, i.e„ the search was conducted at a time when there was a single Florida district court case addressing the issue. Thus the Florida Supreme Court was not presented with the question of whether, under such circumstances, that single opinion would be the equivalent of a "bright-line rule.”

. The Florida Supreme Court has likewise noted that deterrence is the primary purpose behind the exclusionary rule. See State v. Teamer, — So.3d-, 2014 WL 2979378, 39 Fla. L. Weekly S478, S481 (Fla. July 3, 2014).
The court also acknowledged Davis ’s holding that the good-faith exception applies "where police acted in objectively reasonable reliance on binding judicial precedent." Id.