# Supreme Court of Florida

_____

No. SC15-2149
_____

**OSCAR RAY BOLIN, Jr.,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[December 17, 2015]

PER CURIAM.

Oscar Ray Bolin, Jr., a prisoner under sentence of death, appeals an order from the Sixth Judicial Circuit denying his successive postconviction motions filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the circuit court's orders.

## BACKGROUND

Oscar Ray Bolin, Jr., is scheduled for execution on January 7, 2016, for the first degree murder of Teri Lynn Matthews. Matthews' body was discovered on December 5, 1986, near the side of a road in rural Pasco County. Bolin v. State,

869 So. 2d 1196, 1198 (Fla. 2004).  Her murder was unsolved until July 1990.

Bolin was eventually implicated and convicted and sentenced to death for

Matthews' murder in 1992, but that conviction was overturned by this Court

because improper evidence was admitted at trial.  State v. Bolin, 650 So. 2d 19, 21

(Fla. 1995) (concluding that trial court erred in finding waiver of spousal privilege

based on defendant's deposition of ex-wife).  On remand, Bolin was convicted and

again sentenced to death.  This Court overturned that conviction, finding that the

trial court abused its discretion in denying Bolin's motion for individual voir dire

of prospective jurors on the issue of pretrial publicity.  Bolin v. State, 736 So. 2d

1160, 1166-67 (Fla. 1999).

The evidence presented at Bolin's third trial included:

Matthews'[1] body was discovered on December 5, 1986, near the
side of a road in rural Pasco County.  The body was found wrapped in
a sheet imprinted with a St. Joseph's Hospital logo.  The body had
multiple head injuries, was shoeless, and was wet, although it had not
rained recently.  The victim's car keys were found close to the body.
Evidence collected from the scene included nylon pantyhose and a
pair of white pants.  There was a single set of truck tire tracks leading
to the body.  The victim's car was found the next day by Matthews'
boyfriend, Gary McClelland, who was worried about her
disappearance and attempted to trace her steps after she left work the
previous day. The victim's red Honda was found parked at the Land
O' Lakes Post Office, with its headlights still on.  The victim's mail
was found scattered on the ground, and her purse was found
undisturbed on the seat inside her car.

---

1. The spelling of the victim's name has been corrected throughout this
quote.

Bolin's half-brother, Phillip, testified that he was awakened by Bolin on the night of December 4, 1986. Bolin appeared to be nervous and told Phillip that he needed Phillip's help. The two walked outside, and then Phillip heard a moaning sound, which he thought could have been a wounded dog. Instead, he saw a sheet-wrapped body, and Bolin told him that the girl was shot near the Land O' Lakes Post Office. Bolin then walked over and straddled the body with his feet, raised a wooden stick with a metal end, and hit the body several times. Phillip said that he turned away because he was scared to watch, but compared the sound to hitting a pillow with a stick. Bolin next turned on a water hose and sprayed the body. Bolin demanded that Phillip help him load the body onto the back of a black Ford tow truck, and Phillip helped by picking up the body by the ankles. Phillip testified that he noticed there were no shoes on the body and that the girl was wearing pantyhose. Phillip refused Bolin's offer of money to go with him to dispose of the body, so Bolin went alone and returned twenty to thirty minutes later. He continued talking to Phillip about the girl, stating that she had been shot in a drug deal.

At school the next day, Phillip talked with his friend, Danny Ferns, about what happened the night before and took Danny to where the body had been. Danny testified at trial, to corroborate Phillip's account of the murder, that there were blood stains on the ground at the site and that the grass in the area was disturbed. The State presented other corroborating evidence, which included the testimony of Rosie Kahles Neal. At the time of the murder, Neal co-owned with her now-deceased husband Kahles and Kahles, Inc., the business that employed Bolin as a tow truck driver. She testified that the truck Bolin was driving on the night of the murder was not returned that night, and she thought the truck had been stolen by Bolin because he could not be located and it was the first call he had handled by himself. Neal testified that Bolin was late coming to work the next morning, was wearing the same clothes as he had the day before, and had a foul smell. She further testified that Bolin played with and carried a knife and got excited when the story of the missing girl, Matthews, was reported on the news. Her testimony also corroborated the murder weapon, as she testified that she gave Bolin a "tire buddy" on the night of the murder. The tire buddy was a two-foot-long wooden club, which was drilled out and filled with lead.

Michelle Steen also offered corroborating testimony. Michelle Steen was married to Bolin's cousin, David Steen. In 1987, while Bolin visited their home, he volunteered that he had killed and beaten a girl in Florida and put a hose down her throat, and that Phillip had watched him do it.

The State then offered the perpetuated videotaped testimony of Cheryl Coby, Bolin's ex-wife, who had died after the first trial. She had been a severe diabetic, was hospitalized numerous times in 1986, often brought home hospital towels and sheets from St. Joseph's Hospital, and identified the sheet that had been wrapped around Matthews' body as a hospital sheet resembling the ones she brought home. Cheryl Coby had a post office box at the Land O' Lakes Post Office, and Bolin picked up her social security checks there when she was in the hospital.

The State also offered DNA testimony indicating that Bolin could have been the source of the semen found in a stain on Matthews' pants. Federal Bureau of Investigation forensic serology expert John R. Brown testified that he could not eliminate Bolin as the contributor of the semen stain but could eliminate Gary McClelland, Matthews' boyfriend, as the source of the stain. David Walsh, a molecular biologist, extracted DNA from the stain on the pants and found that he could exclude both the victim and McClelland as the donors of the stain on the pants. Walsh found that five of the six bands of DNA detected in the stain matched five of the six bands from Bolin's DNA. Walsh was not able to visualize one band because of the small amount of DNA remaining on the pants. Dr. Christopher Basten, an expert in population genetic frequency, testified that Bolin was 2100 times more likely to be the source of the semen than a random, unrelated person.

Bolin, 869 So. 2d at 1198-99. Bolin was convicted and sentenced to death, which this Court affirmed. Id. at 1198, 1205.

In 2010, this Court upheld the denial of postconviction relief. Bolin v. State, 41 So. 3d 151, 153 (Fla. 2010). Bolin filed a petition for a writ of habeas corpus in the federal district court, claiming "that his trial attorney was ineffective in (1)

failing to object to testimony of Danny Ferns that he saw blood on the ground where Philip Bolin told him the body had been, and (2) failing to call Bolin's father, Ray Bolin, Sr., to rebut Danny Ferns' testimony." Bolin v. Sec'y Dept. of Corr., No. 8:10–cv–1571–T–27EAJ, 2013 WL 3327873, at *5 (M.D. Fla. July 1, 2013). The federal district court denied Bolin's habeas petition, and did not issue a certificate of appealability. Id. at *17.

On September 26, 2014, Bolin filed his first successive postconviction motion based on newly discovered evidence. Bolin alleged that an Ohio inmate confessed to Matthews' murder. The circuit court granted an evidentiary hearing, but the inmate, Steven Kasler, committed suicide before the hearing took place.

On December 9, 2014, Bolin filed a motion for postconviction DNA testing requesting that evidence in his case be compared to Kasler's DNA profile. The circuit court summarily denied Bolin's motion for DNA testing finding that Bolin failed to establish the availability of Kasler's DNA. This Court affirmed the denial of Bolin's motion for postconviction DNA testing. Bolin v. State, No. SC15-213, 40 Fla. L. Weekly S516, 2015 WL 5511523 (Fla. Sept. 18, 2015) (Table). Despite the circuit court's denial and this court's affirmance, DNA testing was ordered and completed August 26, 2015. The results excluded Kasler as a contributor to the samples collected from Matthews, but did not exclude Bolin.

Proceedings on Bolin's first successive postconviction motion continued when, on December 15, 2014, the circuit court denied two of Bolin's claims and granted leave to amend one claim. Bolin filed his amended first successive motion on February 13, 2015. On October 19, 2015, following an evidentiary hearing, the circuit court denied the amended motion.

Governor Scott signed Bolin's death warrant on October 30, 2015.

Bolin moved for rehearing on November 3, 2015, and subsequently filed his second successive motion for postconviction relief. Thereafter, the circuit court issued an order denying both the motion for rehearing and the second successive motion for postconviction relief.

## ANALYSIS

In these proceedings, Bolin claims that newly discovered evidence establishes that someone else committed the murder in question and that the State suppressed evidence relating to the crime. Because we find that Bolin has failed to establish that he is entitled to relief, we affirm the circuit court's orders denying relief.

### Newly Discovered Evidence

#### Steven Kasler

First, Bolin argues that the circuit court improperly denied his claim that newly discovered evidence in the form of Kasler's confession would probably

acquit him if introduced at a new trial. Because Bolin has failed to establish that the evidence would likely result in an acquittal or a lesser sentence, the circuit court properly denied this claim. Furthermore, Bolin's additional corroboration offered at rehearing was properly denied because the information did not corroborate details associated with the crime at issue in this case—the murder of Teri Lynn Matthews. Accordingly, we affirm the circuit court's denial of relief.

To obtain a new trial based on newly discovered evidence, Bolin must demonstrate that (1) the evidence was unknown by the trial court, counsel, or himself at the time of trial and that neither he nor counsel could have discovered it by the use of diligence and (2) the evidence is of such a nature that it would probably produce an acquittal on retrial. See Jones v. State (Jones II), 709 So. 2d 512, 521 (Fla. 1998). The second prong is satisfied if the evidence "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." Id. at 526 (quoting Jones v. State, 678 So. 2d 309, 315 (Fla. 1996)). If, as here, the defendant is seeking to vacate his sentence, the second prong requires that the evidence would probably produce a less severe sentence on retrial. See Jones v. State, 591 So. 2d 911, 915 (Fla. 1991). In determining whether the evidence compels a new trial, the postconviction court must consider all newly discovered evidence that would be admissible and evaluate the weight of both the

newly discovered evidence and the evidence that was introduced at trial.  Id. at 916.

In its analysis of this issue, the circuit court relied on Carpenter v. State, 785 So. 2d 1182 (Fla. 2001) (holding that under Florida law, it is the duty of the jury not the trial court to assess the credibility of the in-court witness who is testifying about the out-of-court statement), to determine the admissibility of Kasler's confession.  In so doing, the court found that "unlike the many specific corroborated facts found in Carpenter, . . . the limited information provided by Kasler, in confessing to the murder of Teri Lynn Matthews, is insufficiently specific and lacks the 'particularized guarantees of trustworthiness,' that seem to be required under § 90.804(2)(c)."  The court therefore found that the "statements attributed to Kasler are insufficiently corroborated to qualify as a hearsay exception under § 90.804(2)(c)."  Nevertheless, the court also continued its Jones analysis as though the statements were admissible and found "that even if Kasler's statements were admitted on retrial, such evidence is not of a nature that it would probably produce an acquittal . . . or a sentence other than death."  The court based its determination on the "wealth of evidence against Bolin," specifically the fact that DNA testing failed to exclude Bolin as the possible contributor but did exclude Kasler.  Based on these findings, the circuit court denied Bolin's claim.

On rehearing, Bolin offered purported additional corroboration of Kasler's confession in the nature of a witness, Teri Ippolito, who could testify that the day before Stephanie Collins' abduction and murder,[2] a dark-complexioned man attempted to lure Ippolito away from the same parking lot where Collins was later abducted. Bolin asserted that this corroborated Kasler's confession that his travelling companion, Albert Eugene Holmes, Jr., aka Petey Holmes, raped Matthews. The circuit court treated Bolin's claims on rehearing as a successive motion for postconviction relief and denied the motion. Specifically, the circuit court found that even if Ippolito's testimony were admissible at retrial, such testimony would not be "relevant to this case because it occurred at a different time, in a different location, and to a different victim." Additionally, the circuit court noted that the trial court had "specifically excluded any comparisons or references to the cases against [Bolin] from Hillsborough County" and that Bolin failed to offer "proof that Petey Holmes even exists." The circuit court's determinations are supported by the record.

---

2. Bolin was separately tried and convicted for the murder of Stephanie Collins in Hillsborough County. See Bolin v. State, 117 So. 3d 728 (Fla. 2013). Bolin was also separately tried and convicted for the murder of Natalie Holley. See Bolin v. State, 8 So. 3d 428 (Fla. 2d DCA 2009). Neither case was used in the guilt or penalty phases of Bolin's third trial for Matthews' murder.

Bolin alleges that Steven Crane, an Ohio inmate, contacted Rosalie Bolin in March 2014 and informed her that another inmate, Steven Kasler, confessed to committing the murder of Teri Matthews. In April 2014, Kasler contacted Rosalie himself. Bolin filed his postconviction motion based on this confession and the court conducted a case management conference on November 13, 2014, at which it scheduled an evidentiary hearing to be held on December 10, 2014. Shortly after the case management conference, Kasler committed suicide. The circuit court cancelled the evidentiary hearing and struck the claim, but granted Bolin leave to amend. Thereafter, Bolin filed his amended motion.

The circuit court conducted an evidentiary hearing on August 24, 2015. At the hearing, Crane was contacted but refused to testify. Bolin's counsel, Bjorn Brunvard, testified about his September 2014 conference call with Kasler and communication he had with Crane. On cross-examination, Brunvard stated that he recalled Kasler stating that he would confess to a number of murders in order to avoid going to Angola Prison in Louisiana, where he was due to serve a 99-year to life imprisonment for a kidnapping and robbery in St. Charles, Louisiana. Kasler confessed to approximately 20 murders, including Teri Matthews' murder, and gave greater detail on some of the other murders.

Kenneth Karnig, who runs a crime memorabilia website, testified that Kasler contacted him in around 2013 by letter and by telephone. Karnig testified that

Kasler informed Karnig that he, Kasler, had nothing to do with the Matthews murder and had written a false confession about it. Karnig testified that at the time Kasler wrote the letter, May 2014, he was in "the hole" and did not have contact with other inmates. Karnig was able to identify letters written by Kasler because they corresponded and discussed the items in the correspondence. According to Karnig, Kasler confessed at the request of another murder memorabilia dealer in Georgia named Jeremy Tod Bohannon.

There was competent, substantial evidence presented at the evidentiary hearing for the circuit court to determine that Kasler's confession would not result in a lesser sentence or acquittal for Bolin if it were presented to a jury. Even if Kasler's alleged confession would qualify as a statement against interest, and were admissible, the statements contain nothing more specific than what was available in news accounts, on the internet, and the opinions regarding the murder. Coupled with the overwhelming evidence of Bolin's guilt, see Bolin, 869 So. 2d at 1198-99, it is unlikely that the alleged confession would probably produce an acquittal for Bolin. The serological testing at trial was a match to Bolin. The more recent DNA testing also did not exclude Bolin as the contributor of the semen stain on the victim's pants. Further, evidence connecting Bolin to the crime was provided by his former boss (who testified that Bolin failed to return with the truck and "tire buddy" on his first night out alone, the same night that Matthews was murdered);

- 11 -

preserved testimony from his ex-wife that she was often at St. Joseph's hospital and brought home sheets similar to that Matthews' body was found wrapped in; and testimony from Philip Bolin that he watched Bolin beat, rinse, and dispose of Matthews' body. See Bolin, 869 So. 2d at 1198-99.

Bolin's additional arguments raised later regarding this claim were likewise appropriately denied. As noted by the circuit court, Ippolito's account of her avoided abduction is not relevant to the Matthews case and does not corroborate any details that would support Kasler's involvement in Matthews' murder. Accordingly, the circuit court properly denied this claim.

## Michael Malone

Second, Bolin argues that the circuit court erred in summarily denying his newly discovered evidence claim that Dr. Frederic Whitehurst, a former FBI forensic analyst who testified at an evidentiary hearing in the Stephanie Collins case, would testify that any and all evidence handled by former FBI agent Michael Malone is unreliable. Because Bolin has not established any evidence that would probably produce an acquittal, the circuit court properly denied this claim.

A defendant is entitled to an evidentiary hearing on a postconviction motion unless it is clear from the motion or record that the movant is not entitled to relief or the claim is legally insufficient. See Jackson v. State, 147 So. 3d 469, 485 (Fla. 2014) (citing Valentine v. State, 98 So. 3d 44, 54 (Fla. 2012)). Conclusory

- 12 -

allegations are not sufficient and the defendant must establish a prima facie case based on a legally valid claim. Id. If there is any doubt whether the movant has made a facially sufficient claim, this Court will "presume that an evidentiary hearing is required." Id. (quoting Walker v. State, 88 So. 3d 128, 135 (Fla. 2012)).

Regarding this claim, in December 2014, the circuit court found that any claims related to Malone's alleged tampering or contamination of the evidence in this case were untimely. Additionally, the circuit court denied Bolin's claim after finding that the allegation was completely speculative and noting that defense counsel conceded that there was no proof that any contamination occurred.

In the present proceeding, Bolin reasserted the claim by alleging that Dr. Whitehurst could testify to support Bolin's assertion regarding Malone's involvement. The circuit court again found the claim untimely, stating: "On December 15, [2014], in summarily denying [Bolin's] first successive motion, the court, in addition to ruling on the merits of the Malone claim, also agreed with the State that it was untimely." Additionally, the court noted that no hair or fiber analysis performed by Malone in this case was ever presented to the jury. The Court found that the correspondence Bolin received "merely identifies Malone as having 'performed laboratory work for the government,' " and was therefore unlike the case-specific testimony-discrediting letters at issue in Wyatt v. State, 71 So. 3d 86 (Fla. 2011), and Smith v. State, 75 So. 3d 205 (Fla. 2011). On the

- 13 -

merits, the circuit court found that Dr. Whitehurst's testimony from the Collins case would be irrelevant to the Matthews case. The court noted, "Malone's involvement with the physical evidence in this case was limited to receiving it from law enforcement, checking for hair and fibers, and then forwarding it on to other examiners for processing." Accordingly, the court found:

> Given Malone's limited handling of the serological evidence in this case, that none of the evidence presented to the jury was tested by Malone, and that Malone did not testify in this case, the court does not see how Dr. Whitehurst's proposed testimony would be relevant or admissible on retrial. At a retrial, [Bolin] would not be permitted to call Dr. Whitehurst for the sole purpose of attacking the credibility of Malone.

The circuit court did not err in summarily denying Bolin's claim. The core of Bolin's claim was filed in his first successive motion for postconviction relief on September 26, 2014. There, Bolin alleged that newly discovered evidence of a case-specific letter regarding Michael Malone's credibility warranted postconviction relief. The correspondence at issue, an email, stated:

> By email dated January 14, 2014 (attached), this Office notified you and attached our correspondence of 9-27-13 with your predecessor as defense counsel in this case, Mr. Norgard, in which we notified him of the 1997 report of the Department of Justice Inspector General that identified work of 13 FBI Laboratory examiners whose work may have failed to meet professional standards. We would like to further inform you that in 1999, the prosecutor advised the 1996 FBI Laboratory Task Force that Malone's work had not been material to the verdict in either the Matthew case, the Collins case, or the Holley case. As a result, the analysis conducted by Malone was not later the subject of an Independent Scientific Review. Please do not

- 14 -

> hesitate to contact me if you have further questions. Please confirm
> your receipt of this email.

(emphasis added). The circuit court properly summarily denied Bolin's claim

because, as defense counsel conceded, there was not, in fact, newly discovered

evidence of actual contamination. On rehearing, Bolin asserted that there was

additional evidence in the form of Dr. Whitehurst's testimony in the Collins case,

but Dr. Whitehurst's testimony is not related to the Matthews case. Whether

Malone contaminated evidence in the Collins case is not relevant to the Matthews

case because neither case relies on the other as aggravation or collateral crime

evidence. Further, as the circuit court correctly noted, Malone did not perform any

analysis of evidence that was presented to the jury in the Matthews case.

Accordingly, the circuit court properly summarily denied this claim as untimely

and without merit.

## Brady v. Maryland

### Kasler Confession

Third, Bolin claims that the State knowingly suppressed information that

Kasler confessed to the murder of Teri Lynn Matthews. Because Bolin has failed

to establish the suppression of any material evidence, the court properly denied this

claim.

To successfully raise a claim of a violation of Brady v. Maryland, 373 U.S.

83 (1963), Bolin must show that (1) the evidence was favorable to him, either

because it was exculpatory or impeaching; (2) the evidence was suppressed by the State; and (3) that the suppression resulted in prejudice. Conahan v. State, 118 So. 3d 718, 729 (Fla. 2013) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Johnson v. State, 921 So. 2d 490, 507 (Fla. 2005); Rogers v. State, 782 So. 2d 373, 378 (Fla. 2001)). "To establish the materiality element of Brady, the defendant must demonstrate 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " Id. at 730 (quoting Guzman, 868 So. 2d at 506). The review of a postconviction court's denial of this claim is under a mixed standard where this Court defers to the lower court's factual findings that are supported by competent, substantial evidence and reviews the application of law de novo. Id.

Below, the circuit court denied the claim stating "even if Kasler's confession and the limited and readily available details associated with it were admissible at trial; when considered within the context of the entire record, such evidence does not undermine confidence in the verdict." The court noted that at the evidentiary hearing defense counsel conceded that there was nothing striking within the confession when combined with newspaper accounts and Supreme Court opinions about the case. The court's ruling on Bolin's reasserted claim in his second successive motion was that it was "successive, insufficiently plead[ed], untimely, and without merit."

- 16 -

The circuit court did not err in denying this claim because Bolin cannot establish that the State suppressed any material evidence. As discussed above, Kasler's confession was not reliable and would not likely have persuaded a jury to acquit Bolin in light of the overwhelming evidence of his guilt. Accordingly, Bolin has not demonstrated that the evidence was material. Additionally, Bolin has not demonstrated that the State suppressed the information. Bolin's allegation is that the State became aware of Kasler's confession through Crane in 2013 but did not turn that information over until after Kasler committed suicide in 2014. However, by Bolin's own timeline, Crane contacted Rosalie in March 2014, six months before Bolin attempted to contact Kasler. Accordingly, Bolin has not demonstrated that the evidence was suppressed.

Malone

Fourth, related to the assertion of newly discovered evidence of Michael Malone's misconduct, Bolin argues that the State violated Brady by failing to disclose the alleged bad acts of former FBI agent Malone. In its December 2014 order, the circuit court denied this claim finding that Bolin failed to identify what evidence was in the State's possession that was favorable to him. The circuit court, citing Trepal v. State, 846 So. 2d 405, 423 (Fla. 2003), noted that the correspondence between the Department of Justice and the State Attorney's Office was not admissible and additionally noted that the correspondence had been

provided to Bolin in 2004 as part of the State Attorney's response to his public records request. The court also stated that, "as a result of a motion to suppress, no evidence was presented to the jury regarding any testing, analysis, or conclusions of Agent Malone." In its most recent order, the circuit court denied Bolin's reassertion of the claim as "successive, insufficiently plead[ed], untimely, and without merit." The circuit court did not err.

Bolin cannot establish any of the prongs required to succeed under Brady. He cannot show that there was material evidence that was suppressed and that the suppression prejudiced him. First, the circuit court cited to the portion of the record that refuted Bolin's claim that the evidence was suppressed. Bolin received the correspondence as part of his public records request in 2004—ten years before he filed the instant claim. Second, Bolin's counsel conceded that there was no evidence of contamination in this case because Malone did not testify. Accordingly, Bolin cannot demonstrate any material evidence unknown to him that the State suppressed to his prejudice. Therefore, the circuit court properly denied this claim.

### Death Warrant Selection Process

Last, Bolin argues that the unfettered discretion of the Governor to select condemned inmates for execution is unconstitutional. Because this Court has rejected this claim in the past and Bolin does not provide a compelling reason for

this Court to reconsider its precedent, this claim is without merit. Furthermore, Bolin argues that his selection while claims were still pending violates his right to due process.

The circuit court denied this claim without an evidentiary hearing. First, the court found that this claim was procedurally barred as untimely, specifically rejecting Bolin's argument that this claim constitutes newly discovered evidence. Second, the court found that the warrant selection process does not violate the Eighth Amendment. Third, the court found that the warrant selection process does not violate Bolin's due process. Last, the court also rejected Bolin's claim based on the principle of separation of powers, finding that Bolin's argument misapplied the doctrine.

The circuit court properly rejected Bolin's claim that the Governor's discretion to select an inmate for execution is unconstitutional. This Court has previously and repeatedly denied similar claims. See, e.g., Ferguson v. State, 101 So. 3d 362, 366 (Fla. 2012); Gore v. State, 91 So. 3d 769, 779-80 (Fla.) (holding that the Governor's unfettered discretion under the Florida Rules of Executive Clemency and separation of powers concerns apply to claims relating to the Governor's authority to sign death warrants) cert. denied, 132 S. Ct. 1904 (2012); Valle v. State, 70 So. 3d 530, 551-52 (Fla.) (rejecting a claim that the Governor's absolute discretion to sign death warrants renders Florida's death penalty structure

unconstitutional) cert. denied, 132 S. Ct. 1 (2011); Marek v. State, 14 So. 3d 985, 998 (Fla.), cert. denied, 130 S. Ct. 40 (2009) (citing Marek v. State, 8 So. 3d 1123, 1128-29 (Fla. 2009)).

Bolin alleges that his claim is distinguishable because his first successive postconviction motion was not final—no rehearing had yet been filed, and accordingly no appeal had been filed—when the Governor signed the death warrant. Thus, Bolin contends that his selection while claims were still pending violates his right to due process. In Abdool v. Bondi, 141 So. 3d 529 (Fla. 2014), this Court reviewed whether section 922.052 violates due process, recognizing that while "no single test . . . applies to determine whether the requirements of procedural due process have been met," courts must consider the "individualized facts of each case to determine whether the defendant has been accorded the process which the state and federal constitutions demand." Id. at 544. In examining the statute, this Court concluded that the Act does not facially violate due process. Id.

In reviewing the circumstances of this case, we conclude that Bolin's due process rights have not been violated and his argument fails. Bolin fully presented his claims to the circuit court, and the circuit court held an evidentiary hearing for those claims requiring additional factual development. On appeal, this Court has had ample opportunity to comprehensively review the record and the claims raised.

- 20 -

Further, Bolin's procedural posture is similar to the posture in <u>Marek</u>, where Governor Crist signed Marek's death warrant on April 20, 2009, when his second successive postconviction motion was pending in the circuit court, which denied the motion on April 23, 2009. We find that Bolin has not presented any reason for this Court to recede from its prior decisions, and his claim was properly denied.

**Conclusion**

For the reasons expressed above, we affirm the order of the circuit court denying Bolin's successive postconviction motions. No rehearing will be entertained by the Court, and the mandate shall issue immediately.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and PERRY, JJ., concur.
QUINCE, J., recused.

An Appeal from the Circuit Court in and for Pasco County,
     Stanley Richard Mills, Judge - Case No. 511991CF000521A000W

Jason Jervis Wise and Bjorn Erik Brunvand of Brunvand Wise, P.A., Clearwater, Florida,

     for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Stephen D. Ake, Assistant Attorney General, Tampa, Florida,

     for Appellee