# Supreme Court of Florida

—————

No. SC2026-0112

—————

**RONALD PALMER HEATH,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

—————

No. SC2026-0113

—————

**RONALD PALMER HEATH,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

February 3, 2026

PER CURIAM.

Ronald Palmer Heath, a prisoner under sentence of death for whom a death warrant has been signed and an execution set for February 10, 2026, appeals the circuit court's orders summarily

denying his second successive motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851 and his several post-warrant public records requests made under Florida Rule of Criminal Procedure 3.852. Heath also petitions this Court for a writ of habeas corpus and moves for a stay of execution. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the denial of postconviction relief and public records requests and deny the habeas petition and motion for a stay of execution.

## I. BACKGROUND

Heath was sentenced to death for the first-degree murder of Michael Sheridan in Gainesville in 1989. On direct appeal, this Court summarized the facts as follows:

> Heath and his younger brother, Kenneth, drove to Gainesville to visit some of Heath's friends. On May 24, 1989, the brothers went to the Purple Porpoise Lounge in Gainesville where two of Heath's friends worked as waitresses. Sometime during the evening the brothers struck up a conversation with Sheridan, a traveling salesman who had come to the lounge for drinks and dinner. Sheridan bought the brothers a drink and inquired if they ever got high or had any marijuana. Heath suggested to Kenneth that they take Sheridan somewhere and rob him; Kenneth agreed. The trio left the bar in Kenneth's vehicle, which Heath drove to an isolated area of Alachua County. After parking on a dirt

road, all three got out of the car and smoked marijuana. Heath made the hand motion of a pistol and asked Kenneth, "Did you get it?" Kenneth retrieved a small-caliber handgun from under the car seat, pointed it at Sheridan, and told him that he was being robbed. Sheridan balked at giving the brothers anything. Heath told Kenneth to shoot Sheridan. When Sheridan lunged at Kenneth, Kenneth shot him in the chest. Sheridan sat down, saying "it hurt." As Sheridan began to remove his possessions, Heath kicked him and stabbed him in the neck with a hunting knife. Heath attempted to slit Sheridan's throat, but was unable to complete the task with the dull knife and could only saw at Sheridan's neck. Heath then instructed Kenneth to kill Sheridan with the gun, and Kenneth shot him twice in the head. The brothers moved the body further into the woods. After returning to the Purple Porpoise, the brothers took Sheridan's rental car to a remote area, removed some items, and burned the car.

The next day the brothers used Sheridan's credit cards to purchase clothes, shoes, and other items at a Gainesville mall. Although Kenneth signed all of the credit card slips, clerks from the various stores testified about the purchases made by the brothers and identified Heath in a photo lineup. . . .

. . . .

Several weeks after the murder, Heath was arrested at his trailer for using the stolen credit cards. [Heath's girlfriend] granted the officers permission to search the trailer and her car. The officers discovered some of the clothes purchased in Gainesville and Sheridan's watch.

. . . .

Heath's trial commenced on November 5, 1990. The primary evidence linking Heath to the crime was the testimony of Kenneth, Heath's possession of a watch which could be traced to Sheridan through its serial number, and Heath's possession of certain merchandise acquired in Gainesville with Sheridan's stolen credit cards. The jury found Heath guilty of the first-degree

murder and armed robbery of Sheridan, as well as conspiracy to commit uttering a forgery, conspiracy to commit forgery, seven counts of forgery, and seven counts of uttering a forgery. In the penalty phase, the jury recommended the death penalty by a vote of ten to two. In its sentencing order, the trial court found two aggravating circumstances: Heath was previously convicted of second-degree murder; and the murder was committed during the course of an armed robbery. The trial court found three mitigating circumstances: that Heath was under the influence of extreme mental or emotional disturbance, based upon his consumption of alcohol and marijuana; that Heath demonstrated good character in prison; and that codefendant Kenneth Heath received a life sentence. The court found that the aggravating circumstances outweighed the mitigating factors and sentenced Heath to death for the first-degree murder conviction.

*Heath v. State*, 648 So. 2d 660, 662-63 (Fla. 1994) (footnotes omitted).

On appeal, this Court affirmed Heath's first-degree murder conviction and death sentence, *id.* at 666, which became final when the United States Supreme Court denied certiorari review in 1995, *Heath v. Florida*, 515 U.S. 1162 (1995); *see* Fla. R. Crim. P. 3.851(d)(1)(B) ("For the purposes of this rule, a judgment is final . . . on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.").

In the decades since, Heath has unsuccessfully challenged his convictions and sentences in state and federal courts. *See Heath v. State*, 3 So. 3d 1017, 1021, 1035 (Fla. 2009) (affirming denial of initial motion for postconviction relief); *Heath v. State*, 237 So. 3d 931, 932 (Fla. 2018) (affirming denial of first successive motion for postconviction relief); *Heath v. Tucker*, No. 1:09-cv-00148-MCR, at *62 (N.D. Fla. Aug. 20, 2012) (denying federal habeas petition); *Heath v. Sec'y, Fla. Dep't of Corr.*, 717 F.3d 1202, 1205 (11th Cir. 2013) (affirming denial of federal habeas relief).

Governor Ron DeSantis signed Heath's death warrant on January 9, 2026. Heath then filed a second successive motion for postconviction relief under rule 3.851 raising four claims: (1) Florida's alleged reckless maladministration of its lethal injection protocol violates the Florida Constitution and the Eighth Amendment, and the circuit court's decision to block any further investigation violates the Fourteenth Amendment; (2) Florida's secrecy rules regarding executive clemency impermissibly block Heath from investigating whether a federally recognized due process claim is available; (3) Heath's death sentence violates the Eighth Amendment because his traumatic juvenile incarceration stunted

his brain development; and (4) Heath's execution would violate the Eighth Amendment because the jury's vote for the death penalty was not unanimous.  The circuit court summarily denied all four claims as well as Heath's post-warrant public records requests. This appeal followed.

## II.  ANALYSIS

### A.  Second Successive Motion for Postconviction Relief

*1. Claims That Florida's Administration of Its Lethal Injection Protocol and the Circuit Court's Decision to Block Further Investigation Are Unconstitutional*

Heath first argues that the circuit court erred in summarily denying his claim that (a) Florida's alleged reckless or negligent maladministration of its lethal injection protocol violates the Florida Constitution and the Eighth Amendment and (b) the circuit court's decision to block any further investigation violates the Fourteenth Amendment.

a. Method of Execution

Heath contended that the method of execution used by the Florida Department of Corrections (FDC) is unconstitutional because the lethal injection protocol was allegedly maladministered in prior executions, which raises concerns about its administration

generally and places Heath in imminent danger of needless pain and suffering.

Heath alleged that inventory logs tracking lethal injection drugs—which came to light in a federal lawsuit filed by Frank Walls, who was executed in December 2025—indicate that FDC has deviated from its protocol in recent executions and is unable to competently carry it out. Heath made several allegations concerning the administration of the protocol in 2025, including that: (1) on three occasions, the logs suggest that FDC did not document the removal from inventory of drugs used in the executions until one or two days after the executions; (2) in one execution, there is no corresponding log entry indicating that etomidate was removed from inventory, despite postmortem testing showing the presence of the drug in the decedent's blood; (3) on two occasions, drugs were removed from inventory one or two days after executions in amounts allegedly less than required by the protocol, suggesting incorrect dosing; (4) on two occasions, lidocaine—a drug not called for in the protocol—was administered; (5) the logs indicated that an expired drug was used during four executions; and (6) one execution took twenty minutes, with movement

occurring after the paralytic would have purportedly been administered.

These allegations of maladministration in 2025 stem from documents attached to Heath's motion, which included pages listing fields such as "drug name," "package size," and "date," among others. Also attached to Heath's motion was a declaration from Joel Zivot, M.D., a physician practicing anesthesiology and critical care, supporting this claim and describing the risks posed by FDC's alleged recklessness in administering the protocol. The circuit court denied the claim and concluded Heath's proposed alternative method of execution was insufficiently pleaded.

To successfully challenge a method of execution, a defendant must "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (citing *Glossip v. Gross*, 576 U.S. 863, 877 (2015)). But speculative and conclusory allegations that lethal injection protocols present a substantial risk of serious harm are insufficient

to warrant an evidentiary hearing. *Cole v. State*, 392 So. 3d 1054, 1065 n.18 (Fla.) (citing *Jimenez v. State*, 265 So. 3d 462, 475 (Fla. 2018)), *cert. denied*, 145 S. Ct. 109 (2024).

The question is not whether protocol deviations occurred but whether the defendant's allegations would demonstrate a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering. Heath's allegations would not demonstrate such a risk. The alleged failure to document the removal of drugs from inventory until one or two days after an execution would not, without more, show a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering during an execution. Nor would the alleged failure to log the removal of etomidate from inventory establish such a risk where the autopsy indicates the drug was, in fact, administered. The allegation that lidocaine was administered on two occasions certainly would not establish a risk of needless suffering. Heath's suggestion that inventory removals on dates that "seemingly correspond[]" to executions and reflect amounts less than required by the protocol show that incorrect doses were used is speculative and Heath does not allege that such incorrect doses

- 9 -

would create a demonstrated risk of severe pain. The same is true of the alleged use of expired drugs and the execution that took twenty minutes and allegedly involved movement. None of Heath's allegations would establish that the method of execution presents a substantial and imminent risk that is sure or very likely—in other words, a virtual certainty—to cause serious illness and needless suffering.

The circuit court also concluded, and we agree, that Heath failed to identify a sufficient alternative method of execution. A proposed alternative method must be "feasible, readily implemented, and in fact significantly reduce[] a substantial risk of severe pain." *Tanzi v. State*, 407 So. 3d 385, 393 (Fla.) (alteration in original) (quoting *Glossip*, 576 U.S. at 877), *cert. denied*, 145 S. Ct. 1914 (2025).

Heath first proposed pausing executions, conducting an independent review of FDC's lethal injection practices, documenting and explaining any alleged errors that have occurred in recent applications of the lethal injection protocol, and providing additional training and reform as necessary before resuming executions using lethal injection. But to show that an alternative

method is feasible and readily implemented, "the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out 'relatively easily and reasonably quickly.' " *Bucklew v. Precythe*, 587 U.S. 119, 120 (2019) (quoting *McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017); *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268, 1300 (11th Cir. 2016)). Heath's proposal lacked such detail. Nor would pausing executions to conduct an investigation, identify problems, reform practices, and conduct training permit Heath's execution to be carried out "reasonably quickly."

The Supreme Court has further said that the inmate proposing an alternative method of execution "must make the case that the State really can put him to death, though in a different way than it plans." *Nance v. Ward*, 597 U.S. 159, 169 (2022). But there is no suggestion that FDC does not "plan" to follow protocol during Heath's execution. Thus, to the extent that this proposal is an alternative method of execution, it was insufficiently pleaded.

As a second alternative, Heath proposed execution by firing squad. But he failed to make even a bare allegation that this method would be feasible or readily implemented, and he offered

- 11 -

only a single unelaborated assertion that a firing squad "would entail less risk of error and severe pain."

This failure to plead sufficient facts showing that a firing squad is feasible, readily implemented, and would significantly reduce a substantial risk of severe pain renders his claim insufficiently pleaded. *See Rogers v. State*, 409 So. 3d 1257, 1268 (Fla.) (rejecting firing squad as an alternative method of execution because defendant failed to show how it could be readily implemented or significantly reduce the substantial risk of severe pain), *cert. denied*, 145 S. Ct. 2695 (2025); *Tanzi*, 407 So. 3d at 393 (same); *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 859 (11th Cir. 2017) (rejecting method-of-execution claim where Boyd did "not come close to pleading sufficient facts to render it *plausible* that [his proposed alternative methods of execution were] feasible, readily implemented methods" that would "significantly reduce a substantial risk of severe pain"); *Valle v. State*, 70 So. 3d 530, 549-50 (Fla. 2011) (affirming denial of relief where claim was speculative and insufficiently pleaded).

For these reasons, we find no error in the summary denial of this claim.

b. Denial of Public Records Requests Relating to Lethal Injection Protocol

Heath next claims that the circuit court erred in denying his post-warrant public records requests under rule 3.852(i) to FDC, the Florida Department of Law Enforcement (FDLE), and the Office of the Medical Examiner for District Eight.[1] Heath sought records relating to more than ten executions that occurred in 2025, with which he alleged there were errors in the drug logs, problems with the preparation of the drugs, or problems with the drugs themselves. Heath asserted that he sought the records because of his "interest in fully investigating, before his scheduled execution, the maladministration of the protocol . . . in 2025." He further claimed that the records were relevant because "they have something to do with the subject matter of lethal injection." The circuit court sustained the agencies' objections—that the requests were untimely, overly broad, unduly burdensome, and did not relate

---

1. Contrary to the title Heath gave this issue, it contains no specific argument that the circuit court's decision to block any further investigation into the alleged maladministration of the protocol violates the Fourteenth Amendment or due process. Thus, we treat this sub-issue as a claim that the relevant records requests were erroneously denied under rule 3.852(i).

to a colorable claim for postconviction relief—and denied the requests.

We review the denial of requests for public records for abuse of discretion, *Muhammad v. State*, 132 So. 3d 176, 200 (Fla. 2013), and find none here. Heath has not shown that the circuit court abused its discretion in denying his requests. His argument that the records related to a colorable claim for postconviction relief— i.e., that the reckless or negligent administration of the lethal injection protocol by FDC places Heath in imminent danger of needless pain and suffering in violation of the Eighth Amendment— lacks merit. As explained above, to prevail on a method-of-execution claim, Heath must not only establish that the method presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering, but he must also identify a known and available alternative method of execution that entails a significantly less severe risk of pain. This he has not done. Further, it cannot credibly be disputed that the requests made to FDC and the Office of the Medical Examiner were overly broad or unduly burdensome. Under these circumstances, we cannot conclude that the circuit court erred in denying the requests for

public records from FDC, FDLE, or the Office of the Medical Examiner at issue here.

### 2. Claim That Florida's Extreme Clemency Secrecy Rules Impermissibly Block Heath from Investigating Whether a Federally Recognized Due Process Claim Is Available

Heath next argues that the circuit court erred in summarily denying his claim that his inability to obtain records from his own clemency proceeding impermissibly impedes him from investigating whether the denial of executive clemency in his case violated federal due process. After his death warrant was signed on January 9, 2026, Heath filed, under rule 3.852(i), requests for the production of public records relating to Florida's clemency process and his own clemency proceeding from various entities, including the Executive Office of the Governor, the Florida Commission on Offender Review, and the Attorney General of Florida. The circuit court denied each request, concluding that the requests were based on nothing more than speculation and conjecture.

As an initial matter, records relating to the clemency process are exempt from disclosure. *See Muhammad*, 132 So. 3d at 203 ("[C]lemency files and records are not subject to chapter 119 disclosure and are exempt from production in a records request

- 15 -

filed in a postconviction proceeding."); § 14.28, Fla. Stat. (2025) ("All records developed or received by any state entity pursuant to a Board of Executive Clemency investigation shall be confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution."). Additionally, Heath failed to establish, as required by rule 3.852(i)(1)(C), that the records "are either relevant to the subject matter of the postconviction proceeding or are reasonably calculated to lead to the discovery of admissible evidence." "[R]ecords requests under Rule 3.852(i) must 'show how the requested records relate to a colorable claim for postconviction relief . . . .' " *Jones v. State*, 419 So. 3d 619, 628 (Fla.) (quoting *Dailey v. State*, 283 So. 3d 782, 792 (Fla. 2019)), *cert. denied*, 146 S. Ct. 79 (2025). And "[w]here a defendant cannot demonstrate that he or she is entitled to relief on a claim or that records are relevant or may reasonably lead to the discovery of admissible evidence, the trial court may properly deny a records request." *Id.* (quoting *Asay*, 224 So. 3d at 700).

Heath's requests generically attested that the records he sought "are relevant to the subject matter of a proceeding under Florida Rule of Criminal Procedure 3.851" or they "appear

- 16 -

reasonably calculated to lead to the discovery of admissible evidence that Florida's clemency process and the manner in which the Governor determined that [Heath] should receive a death warrant on January 9, 2026, was arbitrary and capricious." He further alleged, without elaboration, that there are "indications" that his "clemency denial may not have comported with due process, including the speed at which clemency was denied, simultaneously with the issuance of a warrant, as well as influence from politicians and family members of victims other than the victim in this case."

But challenges to the Governor's absolute discretion to issue death warrants and allegations that the Governor's decision to sign a warrant was influenced by public input do not present colorable claims for postconviction relief. *See, e.g.*, *Bolin v. State*, 184 So. 3d 492, 503 (Fla. 2015) (rejecting claim that Governor's discretion to select an inmate for execution is unconstitutional); *Muhammad*, 132 So. 3d at 203-04 (concluding that the requested clemency "records would not relate to a colorable claim because we have held many times that claims challenging clemency proceedings are meritless"); *Carroll v. State*, 114 So. 3d 883, 887-88 (Fla. 2013)

(rejecting argument that the Governor's selection of a death row prisoner for execution is arbitrary and unconstitutional); *Mann v. State*, 112 So. 3d 1158, 1163 (Fla. 2013) (holding that records sought in the hope of supporting an allegation that the Governor's selection of Mann for a death warrant was tainted by public input were not relevant to any colorable claim, and that such claim is not cognizable); *Valle*, 70 So. 3d at 551-52 (rejecting argument that the Governor's discretion in signing a death warrant results in an arbitrary and capricious selection process).

Accordingly, Heath has not met his burden to show how the requested records relate to a colorable claim for postconviction relief. Instead, he was "seeking to discover if possible claims exist, rather than records to support a colorable claim for postconviction relief," an objective unsupported by law. *Damas v. State*, 423 So. 3d 811, 823 (Fla. 2025). And the denial of such requests does not violate a defendant's rights to due process or access to the courts. *Id.*; *see Randolph v. State*, 422 So. 3d 166, 172 (Fla. 2025) (observing that constitutional challenges to rule 3.852 are not new but that all have been rejected by this Court under state and federal law, including claims that the denial of public records violated due

process and access to courts), *cert. denied*, No. 25-6133, 2025 WL 3236523 (U.S. Nov. 20, 2025); *Bates v. State*, 416 So. 3d 312, 320-21 (Fla.) (rejecting claim that defendants have a right to review and rebut evidence pertaining to their clemency proceeding), *cert. denied*, 146 S. Ct. 66 (2025); *Hutchinson v. State*, 416 So. 3d 273, 279 (Fla.) (rejecting claim that operation of rule 3.852 violates due process), *cert. denied*, 145 S. Ct. 1980 (2025). Heath offers no basis to depart from this precedent. The summary denial of the claim was proper.

### *3. Claim That Heath's Death Sentence Violates the Eighth Amendment Because His Traumatic Prior Incarceration Stunted His Brain Development*

In his third issue on appeal, Heath claims that the circuit court erred in summarily denying his claim that the Eighth Amendment categorically excludes him from execution because, although he was twenty-seven years old at the time of Sheridan's murder, his alleged stunted brain development rendered his "psychological age" no more than twenty-five. Heath asserted that "[f]or the same reasons that drove the Supreme Court to find juvenile offenders less culpable in *Roper* [*v. Simmons*, 543 U.S. 551, 578 (2005)], Heath was less culpable at the time of the offense

- 19 -

because of his still-developing brain, which was stunted beginning at the age of 16 . . . ." Heath brought "this claim as a matter of newly discovered evidence based on Dr. Akinsulure-Smith's findings and recent research."

Dr. Akinsulure-Smith evaluated Heath in November 2025 and concluded that the several instances of sexual violence to which he was subjected while in prison for his prior murder conviction—from ages sixteen to twenty-seven—"resulted in severe, lifelong developmental and health consequences," and that Heath's psychological age at the time of Sheridan's murder was no more than twenty-five. On January 13, 2026, Dr. Akinsulure-Smith wrote a letter intended as an addendum to her evaluation report in which she identified six publications she described as "key resources" supporting her conclusions. Because this claim was untimely, procedurally barred, meritless, and legally insufficient, summary denial was proper.

Heath's argument, like many other recent post-warrant claims, was essentially that because his psychological age was allegedly no more than twenty-five when he committed the murder in this case, the protections recognized in *Roper*—which held that

"[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed"—should be extended to him.  He further contended that the claim is timely because Dr. Akinsulure-Smith's November 2025 evaluation report and the publications on which she relied constitute newly discovered evidence.

Rule 3.851 requires that "[a]ny motion to vacate judgment of conviction and sentence of death must be filed by the defendant within 1 year after the judgment and sentence become final."  Fla. R. Crim. P. 3.851(d)(1).  Although there is an exception to this rule for claims involving newly discovered evidence, Fla. R. Crim. P. 3.851(d)(2)(A), "any claim of newly discovered evidence in a death penalty case must be brought within one year of the date such evidence was discovered or could have been discovered through the exercise of due diligence," *Glock v. Moore*, 776 So. 2d 243, 251 (Fla. 2001).  To obtain relief based on a claim of newly discovered evidence, a defendant has the burden to establish:

> (1) that the newly discovered evidence was unknown by the trial court, by the party, or by counsel at the time of trial and it could not have been discovered through due diligence, and (2) that the evidence is of such a nature

- 21 -

that it would probably produce an acquittal or yield a less severe sentence on retrial.

*Dailey v. State*, 329 So. 3d 1280, 1285 (Fla. 2021).

Contrary to Heath's assertion, neither Dr. Akinsulure-Smith's report nor the publications on which she relied constitute newly discovered evidence so as to render this claim timely. Purported *Roper* claims based on a defendant's psychological, mental, or emotional "age" have been brought in this Court since *Roper* was decided in 2005. Although Heath contended that he could not have raised the claim earlier because the psychological community did not then understand that his immaturity, impulsiveness, and lack of insight were indicators of stunted brain development attributable to his prior incarceration, he does not identify when this information became discoverable. To be timely, the claim had to be brought within one year of the date the underlying information became discoverable through due diligence. *See Glock,* 776 So. 2d at 251.

Dr. Akinsulure-Smith's January 2026 letter identified as "key resources" six publications from 2023-2025 on which she relied in her evaluation of Heath. But even assuming that no relevant

publication or expert knowledge could have supported the claim before 2023, Heath did not explain why the claim could not have been raised in 2023, 2024, or early 2025. Indeed, Dr. Akinsulure-Smith's evaluation report cited more than fifty publications dating back to the 1980s, many of which addressed subjects similar to those discussed in the articles identified in her January 2026 letter concerning the effects of incarceration and sexual assault on adolescents. It is the defendant's burden to establish the timeliness of a successive postconviction claim, *Mungin v. State*, 320 So. 3d 624, 626 (Fla. 2020), and without credibly identifying when the factual basis for the claim became discoverable, Heath cannot establish timeliness. *Damren v. State*, 397 So. 3d 607, 613 (Fla. 2023).

Even if this claim were timely and even if Dr. Akinsulure-Smith's report and addendum—and the publications on which she relied—constituted newly discovered evidence, Heath would still not be entitled to relief. This Court has repeatedly rejected the argument that *Roper*'s categorical bar on executing individuals who were under eighteen at the time of their capital offense should be extended to defendants whose chronological age was over eighteen

at the time of the offense. *See, e.g.*, *Ford v. State*, 402 So. 3d 973, 979 (Fla.) (rejecting claim that the protections of *Roper* should be extended to Ford, who was thirty-six at the time of his capital crimes, because he had a mental and developmental age below eighteen), *cert. denied*, 145 S. Ct. 1161 (2025); *Barwick v. State*, 88 So. 3d 85, 106 (Fla. 2011) (rejecting claim that *Roper* should extend to Barwick, who was nineteen when he committed the capital crime, because his mental age was less than eighteen); *Stephens v. State*, 975 So. 2d 405, 427 (Fla. 2007) (rejecting claim that *Roper* and the Eighth Amendment barred execution of defendant who had a mental and emotional age of less than eighteen years because his chronological age at the time of his crimes was twenty-three); *Hill v. State*, 921 So. 2d 579, 584 (Fla. 2006) (rejecting an extension-of-*Roper* claim and holding "*Roper* only prohibits the execution of those defendants whose *chronological* age is below eighteen").

Here, Heath does not even allege that his psychological age was below eighteen at the time of Sheridan's murder. He instead argues that the same "underlying Eighth Amendment principles" that supported the categorical exemption for juvenile offenders in *Roper* should apply to him because his psychological age was

younger than his chronological age and therefore he was "categorically less culpable than the average criminal." But neither *Roper* nor its underlying Eighth Amendment rationale extends to offenders whose chronological age was over eighteen at the time of their capital offense.

Nor are we persuaded by Heath's attempt to reframe this claim as invoking *Roper*'s "underlying Eighth Amendment principles" rather than seeking an extension of *Roper* itself. Thus, this claim also lacks merit because, as we have repeatedly explained, this Court lacks the authority to extend *Roper*:

> The conformity clause of article I, section 17 of the Florida Constitution provides that "[t]he prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." This means that the Supreme Court's interpretation of the Eighth Amendment is both the floor and the ceiling for protection from cruel and unusual punishment in Florida, and this Court cannot interpret Florida's prohibition against cruel and unusual punishment to provide protection that the Supreme Court has decided is not afforded by the Eighth Amendment.

*Gudinas v. State*, 412 So. 3d 701, 713 (Fla.) (alteration in original) (quoting *Ford*, 402 So. 3d at 979), *cert. denied*, 145 S. Ct. 2833

(2025); *Barwick v. State*, 361 So. 3d 785, 794 (Fla. 2023).

For these reasons, summary denial of this claim was proper.

*4. Claim That Heath's Execution Would Violate the Eighth Amendment Because the Jury's Death Penalty Recommendation Was Not Unanimous*

The circuit court denied this claim as procedurally barred and meritless. The court found the claim procedurally barred because Heath raised it in both prior postconviction proceedings. In his initial postconviction proceeding, Heath argued "that Florida's sentencing structure is unconstitutional in violation of *Ring* [*v. Arizona*, 536 U.S. 584 (2002)] because it does not require a unanimous jury to recommend a sentence of death." *Heath*, 3 So. 3d at 1035. This Court rejected the argument and affirmed the denial of relief. *Id.*

In his first successive motion for postconviction relief, Heath argued that he was entitled to relief from his death sentence under *Hurst v. Florida*, 577 U.S. 92 (2016), and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020).[2] Heath specifically asserted that his death

2. In *Hurst*, the United States Supreme Court held that Florida's capital sentencing scheme was unconstitutional because it

sentence based on a nonunanimous jury recommendation was unconstitutional because the Eighth Amendment requires that a "jury must unanimously recommend the death penalty before a death sentence may be imposed." This claim was also summarily denied and affirmed on appeal. *See Heath*, 237 So. 3d at 931-32 (holding that "*Hurst* does not apply retroactively to Heath's sentence of death," and citing *Hitchcock v. State*, 226 So. 3d 216, 217 (Fla. 2017), for the proposition that *Hurst v. State* also does not apply retroactively to Heath's death sentence).

Heath contends that the circuit court erred in finding this claim procedurally barred because, he says, it is distinct from his

"required the judge alone to find the existence of an aggravating circumstance." 577 U.S. at 103. On remand from *Hurst*, this Court held in *Hurst v. State* that "before a sentence of death may be considered by the trial court in Florida, the jury must find the existence of the aggravating factors proven beyond a reasonable doubt, that the aggravating factors are sufficient to impose death, and that the aggravating factors outweigh the mitigating circumstances." 202 So. 3d at 53. This Court then determined that *Hurst* does not apply retroactively to cases in which the death sentence became final before the issuance of *Ring, Asay*, 210 So. 3d at 22, nor does *Hurst v. State, Hitchcock v. State*, 226 So. 3d 216, 217 (Fla. 2017). Four years after deciding *Hurst v. State*, this Court "recede[d] from *Hurst v. State* except to the extent it requires a jury unanimously to find the existence of a statutory aggravating circumstance." *Poole*, 297 So. 3d at 507.

- 27 -

prior claims in that it alleged that a nonunanimous death recommendation violates the Eighth Amendment under "evolving standards of decency." But rebranding the argument as one based on evolving standards of decency does not change the substance: Heath again argues that his death sentence violates the Eighth Amendment because it was imposed based on a nonunanimous jury recommendation. *See Zack v. State*, 371 So. 3d 335, 350 (Fla. 2023) (explaining that an "evolving standards of decency" challenge to a nonunanimous jury recommendation is "precisely the same" as arguing "that the Eighth Amendment requires a unanimous jury recommendation of death" (quoting *Poole*, 297 So. 3d at 504)). The circuit court therefore properly denied this claim as procedurally barred.

The circuit court also properly denied this claim on the merits. "[T]he Supreme Court's precedent establishes that the Eighth Amendment does not require a unanimous jury recommendation of death." *Dillbeck v. State*, 357 So. 3d 94, 104 (Fla. 2023). And this Court has previously rejected claims that nonunanimous death recommendations offend evolving standards of decency and thereby violate the Eighth Amendment. *See James v. State*, 404 So. 3d 317,

327 (Fla.), *cert. denied*, 145 S. Ct. 1351 (2025); *Zack*, 371 So. 3d at 350.  Heath is not entitled to relief on this claim.

## B.  Habeas Petition

In his habeas petition, Heath argues that his death sentence is disproportionate relative to his brother Kenneth's life sentence in light of new information regarding their relative culpability, and executing Heath without reconsidering proportionality would violate the Eighth and Fourteenth Amendments.  The claim is without merit.

Heath urges this Court to recede from its decision in *Cruz v. State*, 372 So. 3d 1237, 1245 (Fla. 2023), *cert. denied*, 144 S. Ct. 1016 (2024), in which we held that "[a]s an integrated part of comparative proportionality review, relative culpability review was rendered obsolete by the *Lawrence* [*v. State*, 308 So. 3d 544 (Fla. 2020)] decision."  372 So. 3d at 1245.  Heath offers no support for this request beyond his assertion that *Lawrence* and *Cruz* were "misguided," and we decline to adopt his view.  Moreover, as *Cruz* explained, "relative culpability review is neither constitutionally required nor consistent with ensuring that a constitutional capital sentence was rendered."  *Id.*  Accordingly, we deny the petition.

### III. CONCLUSION

For the reasons stated above, we affirm the circuit court's orders that summarily denied Heath's second successive motion for postconviction relief and his post-warrant public records requests raised herein. We deny Heath's petition for a writ of habeas corpus and deny his motion for a stay of execution.

No motion for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.
LABARGA, J., concurs in result.

An Appeal from the Circuit Court in and for Alachua County,
James M. Colaw, Judge – Case No. 011989CF003026AXXXXX
And an Original Proceeding – Habeas Corpus

Sonya Rudenstine, Gainesville, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, Jason W. Rodriguez, Senior Assistant Attorney General, Benjamin L. Hoffman, Senior Assistant Attorney General, and Nicole Rochelle Smith, Senior Assistant Attorney General, Tallahassee, Florida,

    for Appellee/Respondent